PRINCE GEORGE'S COUNTY, MARYLAND *v.* LOUIS
J. CARUSILLO ET UX.

[No. 826, September Term, 1981.]

*Decided July 8, 1982.*

The cause was argued before MORTON and MOORE, JJ., and
RICHARD M. POLLITT, Associate Judge of the First Judicial
Circuit, specially assigned.

*Alan E. D'Appolito, Associate County Attorney for Prince
George's County,* with whom were *Robert B. Ostrom, County*

*Attorney for Prince George's County,* and *Michael O. Connaughton, Deputy County Attorney for Prince George's County,* on the brief, for appellant.

*Russell W. Shipley,* with whom was *John P. McDonough* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

Once again, Prince George's County asks this Court to uphold its refusal to upgrade the water and sewer classification of the 3.46 acres owned by the appellees, Louis J. and Anna Carusillo. We ruled in favor of the County in 1979, affirming the Circuit Court for Prince George's County (McCullough, J.), which had dismissed the Carusillos' petition because they had failed to exhaust their administrative remedies after the County Council denied their request. *Carusillo v. Prince George's County,* No. 385, September Term, 1979, filed December 12, 1979 (unreported). However, the Court of Appeals reversed, finding that the Carusillos had no administrative remedies to exhaust before seeking review of the Council's action. *Carusillo v. Prince George's County,* 289 Md. 436, 424 A.2d 1106 (1981). Accordingly, the case was remanded, and Judge McCullough, who on May 5, 1981 held a hearing on the merits, remarked, "we are back to square one." Even so, the court concluded that the County Council's refusal to grant the appellees' requested upgrade was arbitrary and capricious. Thus, the writ of mandamus was proper and the court ordered appellees' property upgraded.

On appeal, the County contends that mandamus is not applicable to the denial of an application for the upgrade of a water and sewer classification because Art. 43 § 387C, Md. Ann. Code (1957, 1980 Repl. Vol.) requires the exercise of discretion by the Prince George's County Council. Further, the County asserts that its refusal to grant the upgrade was not arbitrary and capricious and was supported by substantial evidence. We agree with Judge McCullough's reasoning and shall affirm.

I

Louis J. and Anna Carusillo's property is located on Livingston Road in Oxon Hill, Maryland, just off Indian Head Highway, a major state artery, and adjacent to the historic St. John's Church, which has water and sewer service. The property is zoned C-2 (General Commercial-Existing) and is in water and sewer systems area 5,[1] which means that the County expects to provide water and sewer services from seven to ten years after the adoption of the Ten-Year Water and Sewer Plan, as mandated by Art. 43 § 387C. This statute requires annual revisions and amendments to the Ten-Year Plan, which initially took effect in 1971. On February 1, 1977, the Carusillos applied for an upgrade to area 3, which would have made water and sewer services available in one to two years. Under the present designation, the property cannot be developed because water and sewer service is not available. When the County Council enacted the annual revisions on December 16, 1977, after the proper notice and public hearing pursuant to Section 387C (b)1.(i), no provision was made for upgrade of the Carusillo property. Thus, their request was effectively denied. However, a request by Dave Brown Chevrolet, a commercial property about two miles away, to upgrade to area 3 was granted.[2]

---

1. Pursuant to Art. 43 § 387C (b)4.(v) (1980 Repl. Vol.), the County's Ten-Year Plan includes the following water and sewer systems areas:
Area 1 — service by systems existing or under construction
Area 2 — service by extensions of existing systems in final planning stages
Area 3 — service intended to be available in one to two years
Area 4 — service intended to be available in three to six years
Area 5 — service intended to be available in seven to ten years
Area 6 — no planned service

2. Judge McCullough ruled in the first trial that upgrading the Dave Brown property to area 3 was irrelevant but in his opinion and order on May 27, 1981, he stated: "An additional consideration in determining whether or not the action by the government is arbitrary and capricious is that the Council did in fact grant a request from another applicant, Dave Brown Chevrolet, which is located in the same drainage basin as petitioners' property." Dave Brown's application shows a request for upgrading from area 4 to area 3. The evaluation of the County Planning Department says that the proposal for a 32,000-square-foot new car agency on Indian Head Highway conforms to the master plan, which recommends employment uses, and

The Carusillos filed an Amended Petition for a Writ of Mandamus, Declaratory Judgment, Injunction, Damages, and other appropriate relief on August 28, 1978. They alleged that certain criteria described in Section 387C, in council resolutions enacted pursuant thereto, and in the Ten-Year Plan were applicable to all individual requests for water and sewer area changes, and that they met these criteria.

The criteria included the following:

1. a preliminary subdivision plan approved by the Maryland-National Capital Park and Planning Commission (M-NCPPC);

2. sewage and transmission capacity within the applicable drainage basin;

3. proper zoning;

4. conformity with the adopted master plan; and

5. ability to be serviced by a non-program extension.

At the trial on January 29, 1979, the parties stipulated to the following:

1. That the property of the Petitioners [Carusillos] herein involved can be served without additional programmed size sewer;

2. That there existed, at the time of the decision in this matter by the County Council for Prince George's County, physical system capacity for the proposed development of the Petitioners' property;

3. That the criteria publicly set forth by the County Council for change in sewer systems area category are contained in the adopted Ten Year Water and Sewer Plan text as well as Article 43, Section 387C;

---

would be in line with the new master plan for subregion VII being developed. Both Dave Brown's and the Carusillos' applications met the criteria required for area 3 classification.

4. That the above criteria were applied to Petitioners' property as well as others;

5. That Petitioners' property is presently zoned C-2;

6. That such zone allows the construction of a retail commercial store containing 3,000 square feet;

7. That a request by Dave Brown Chevrolet for sewer systems area category 3 was approved by the Council;

8. That Dave Brown Chevrolet is located in the same drainage basin (*i.e.*, Piscataway Sewage Treatment Plant) as Petitioners' property; and

9. That St. John's Church which opposes the extension of sewer to this property is sewered by public sewer and water and is almost across the street from the property.

The County's only witness was Ken Leslie, a planner with the County Department of Program Planning and Economic Development, the agency responsible for receiving individual requests for upgrades and coordinating the reviews of such requests by the Department of Public Works, the Department of Health, the Washington Suburban Sanitary Commission and the M-NCPPC. He testified that the sewer line to which the Carusillos sought access was an extension off the main line (to which St. John's Church was hooked) and had been built in 1969 to pick up a failing septic tank problem in a subdivision called Fort Foote Estates. The intention, he said, was not to open up the drainage basin to new development but to provide service to a health hazard area. The Carusillos proposed to build, at their own cost, a 1,360-foot line to this extension which led to the main trunk line.

According to Mr. Leslie, the major facts underlying his recommendation that the Carusillos' property remain in area 5 were:

1. there was no pending growth in the large area surrounding the Carusillo acreage;

2. while the original South Potomac Master Plan designated the property for commercial use, the new Master Plan for Subregion VII was being drawn up and any changes in sewer classification should await its promulgation;[3]

3. the extension of sewer into area 5 would not conform with the orderly expansion of public utilities which is one of the major purposes of the Ten-Year Plan;

4. the recommendation of the M-NCPPC in favor of an upgrade, because adequate public facilities including water and sewer existed, was based on a mistake of fact that the Carusillos' property was in area 4, not 5;

5. although the property's preliminary subdivision plan was approved, as required by the Ten-Year Plan's criteria, an accompanying site plan, required by the M-NCPPC, has not been approved;

6. the proximity of the property to St. John's Church, which opposed the development,[4] and the 100-year flood plain, since filled, "has raised several questions regarding the most appropriate land use for the property"; and

7. although Livingston Road is capable of handling the increased traffic, all major intersections with Md. Route 210 (Indian Head Highway)

**3.** In their motion to advance for trial following the Court of Appeals' reversal, the Carusillos pointed out that the new subregion VII master plan recommended downzoning of their property from commercial to "low suburban land use." The downzoning would be effective with final adoption of the plan, then expected by the end of 1981, unless they developed and utilized their property in line with its commercial zoning. In the mid-1960s, the property had been rezoned from rural residential to commercial.

**4.** Initially, the Carusillos proposed to build a 39,000-square-foot shopping center and office complex, but this was scaled down to a 3,000 square foot commercial facility after negotiations with St. John's Church, which opposed such development.

are now "experiencing operational problems" which would be compounded by any additional traffic in the area.

On remand, Judge McCullough specifically held that three of these factors were inappropriate in considering a systems area change, to wit, the site plan, the location of St. John's Church, and the expected increase in traffic. The Carusillos, he said, had met all the criteria required for an upgrade, and the Council's action in refusing to grant the change was arbitrary and capricious because no evidence was presented to the Council to warrant such refusal.

## II

The plaintiff seeking a writ of mandamus must demonstrate that a public official has a plain duty to perform certain acts, that the plaintiff has a plain right to have those acts performed, and that no other adequate remedy exists by which plaintiff's rights can be vindicated. *University of Maryland v. Cleland,* 504 F.Supp. 351, 354 (D.Md. 1980). *Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 331 A.2d 55 (1975). The writ will not lie if the plaintiff has any other remedy, *A.S. Abell Co. v. Sweeney,* 274 Md. 715, 337 A.2d 77 (1975); if the duty to act is discretionary and not ministerial, *Maryland Action for Foster Children, Inc. v. State,* 279 Md. 133, 367 A.2d 491 (1977); or if the action is not shown to be arbitrary, capricious or illegal. *Tyler v. Baltimore County,* 251 Md. 420, 247 A.2d 704 (1968). The writ will lie if no statutory provision for a hearing or review exists and public officials are alleged to have abused their discretion. *State Department of Health v. Walker,* 238 Md. 512, 209 A.2d 555 (1965).

The County argues that Art. 43 § 387C requires the exercise of much discretion by the Council, various officials and several agencies. We agree. The County does have discretion in formulating and amending the Ten-Year Water and Sewer Plan, in preparing a statement of policies and objectives to be achieved and implemented by the Plan and

subsequent amendments, and in considering all aspects of planning, zoning, population estimates, engineering economics, and other state regional, municipal, local and area plans. However, nothing in Section 387C grants the County any discretion to set up criteria defining each of the six water and sewer areas and then refuse to permit any change when an applicant has met the criteria in a specific classification. Nothing in Section 387C says the Council or county officials may pick and choose among those who have met the criteria, to grant an upgrade to one and not to the other. Such far-reaching discretion is equivalent to arbitrariness. *See Walker, supra,* 238 Md. at 523.

The language of the statute, Art. 43, § 387C (b) 4.(i) is clear:

"4. In addition, every county plan shall—

(i) Provide for the orderly expansion and extension of community and multiuse water supply systems, community and multiuse sewerage systems and solid waste disposal systems in a manner consistent with all applicable county and local comprehensive land use plans and sizing and staging of facilities construction shall be consistent with these plans. The plan shall demonstrate this through the use of graphic and tabular information.

(v) Delineate with all practical precision those portions of the county which community and multiuse water supply systems, community and multiuse sewerage systems and community solid waste disposal systems may reasonably be expected to serve within the succeeding ten-year period, and any portions in which the provision of such services is not reasonably foreseeable, taking into consideration all related aspects of planning, zoning, population estimates, engineering, and economics, and all State, regional, municipal and local plans; . . ."

So is the language of the Ten-Year Plan, as amended:

"Generally no request for a system area map amendment seeking system areas 1 through 3 will be approved unless the sewage flows and water demands produced by the development and all other land in system areas 1 through 3 could be accommodated by the water and sewerage system in existence or by system improvements which are planned to be made within the next two years. In addition such requests will not be approved unless a preliminary plan of subdivision has been approved for the proposal."

Together, these provisions demonstrate that the County's discretion is limited to formulating, reviewing and revising the Plan which shall "[P]rovide for the orderly expansion and extension" of water and sewer systems "in a manner consistent with all applicable county and local comprehensive land use plans. . . ." Thus, Section 387C is a prospective statute, *District Land Corp. v. Washington Suburban Sanitary Commission,* 266 Md. 301, 292 A.2d 695 (1972), and does not confer ultimate discretion on the County Council to deny an area classification change to an applicant who has met the criteria. The County is bound by its own criteria [5] and cannot bootstrap its desire to retard or thwart development in a commercially zoned area onto a statute designed to prevent future sewer moratoria.[6] The

---

5. The County in its answer to the amended petition conceded it was bound to grant the request if the applicant met the criteria. The County admitted paragraph 8 of the petition: "The Council was under a duty to apply these criteria uniformly in determining the merit of individual requests for systems area changes. When the criteria for a particular system area is [sic] met, a systems area change to that systems area must be granted, if requested."

6. The purpose of the statute, which is "almost philosophical in tone" according to the Carusillos' counsel, was to ensure that in the late 1960s the County never again experience the type of sewer mortorium imposed because of insufficient sewage treatment capacity. The statute requires counties to adopt and submit to the State Department of Mental Health and Hygiene comprehensive water and sewage plans which, when approved by the Department, control the construction and use of water and sewer systems. *See* Smoke Rise, Inc. v. Washington Suburban Sanitary Commission,

writ of mandamus was properly issued to force the County to grant area 3 classification to the Carusillos. Further, the writ is also proper on the ground that no hearing or review is provided to those who are refused reclassification. *Walker, supra,* 238 Md. at 522. *See also Carusillo, supra,* 289 Md. at 441.

### III

The County also argues that the refusal to upgrade the property from area 5 to area 3 was supported by substantial evidence. However, the "evidence" in support of this argument is illusory at best.

1. The County alleged that extension of the 1,360-foot "non-program" sewer line to the Carusillos' property would be inconsistent with the statutory direction that the Ten-Year Plan provide for orderly expansion. However, the Carusillo line would be funded by the Carusillos, hooked up to an existing sewer line that predates the Ten-Year Plan, and closed to any other property abutting its length.[7]

2. The County claimed that reclassification should await the new master plan being prepared by the M-NCPPC so as to be consistent with comprehensive land use plans as mandated by Sec-

400 F.Supp. 1369 (D.Md. 1975). While the "use of water and sewer regulations as tools to plan for and achieve orderly, rational development has received approval from the Maryland courts, *id.* at 1391, the regulations (or criteria) cannot be used as a basis for ad hoc decisions. While the County may under Art. 43 § 387C (b) 1. (i) make such revisions in the plan "as it deems necessary to accomplish the plan's objectives and policies," it may not refuse requests for upgrades in area classification when the criteria it requires for such changes are met. *See* Poolesville v. Montgomery County Council, 24 Md. App. 347, 330 A.2d 711 (1975); 60 Att'y Gen. Op. 508 (1975).

7. The Ten-Year Plan contains a disclaimer that when a sewer line traverses areas 4, 5, or 6 to provide service to areas 1, 2, or 3, the line shall be deemed limited access, and those areas so traversed shall not be construed as being in areas 1, 2, or 3 regardless of the physical availability of such service. In any case, those wishing to hook into the line must fulfill the criteria before doing so.

tion 387C (b) 4. (i). However, attempting to apply a non-existent recommendation of an unpublished and unadopted master plan would have violated Prince George's County, Md., Code § 27-119.6(a) (1979) which says such plans shall have no legal effect until approved by the Council.

3. The County argued that the M-NCPPC was mistaken in recommending area 3 classification because it had believed the property to be in area 4. However, the mistake is irrelevant and was caught by the County Planning Department. Moreover, the preliminary subdivision plan was approved based on the actual availability of public facilities, and was not contested.

4. The County contended that its denial was justified by the lack of a site plan and specificity in the Carusillos' application for upgrading. However, the site plan is a condition of subdivision prior to the issuance of building permits. It, like specific details of the proposed development, is not required for a sewer area upgrade. Further, Mr. Leslie admitted on cross-examination that the proposed shopping facility would be very unlikely to exhaust the available sewage plant capacity.

5. The County stated that development of the Carusillo property would adversely affect traffic, and thus approval of the reclassification would be inconsistent with consideration of "planning, zoning, population estimates, economics, . . ." Section 387C(b)(iii). However, the report of the Department of Public Works and Transportation stated that Livingston Road, on which the Carusillo property is located, could handle the increased traffic. Also, the M-NCPPC had approved the preliminary subdivision plan on July 22, 1976, based on its finding that sufficient public facilities and services existed, including adequate access roads. See Prince George's County, Md., Code

§ 24-103(a)(15)(1979); *Board of County Commissioners v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979).

6. The County declared that sewage capacity in the Piscataway Drainage Basin for commercial and industrial projects could be exhausted if all property in areas 1 through 4 were developed. However, the test for advancement to area 3 is whether there is available capacity (or due to be programmed within two years) for all commercial and industrial properties within the drainage basin in areas 1 through 3. The County's own forecast shows an excess of 700,000 gallons per day.

7. Finally, the County claimed that the property's proximity to St. John's Church and the lack of a need for a shopping center were appropriate factors to consider in denying the change because they are "related aspects of planning" under Section 387C (b) 4 (v). However, the property is zoned commercial and opposition to its development by St. John's Church does not change that fact, however much church members may dislike such development. Further, "need" is not a criteria of sewer area classification. *See Aspen Hill Venture v. Montgomery County Council,* 265 Md. 303, 289 A.2d 303 (1972).

The record amply supports the findings by the trial judge that the County was bound by its own criteria, that the Carusillos met all the criteria required for reclassification and that, therefore, they were entitled to an upgrade from sewer area 5 to area 3.

> *Judgment affirmed; appellant to pay the costs.*