680 A.2d 1040

Kenneth M. GOODWICH, et al.,

v.

Paul W. NOLAN, et al.

No. 24, Sept. Term, 1995.

Court of Appeals of Maryland.

Aug. 5, 1996.

132

134

Timothy L. Mullin, Jr. (John E. McCann, Jr., Miles & Stockbridge, on brief), Baltimore, for Petitioner.

Daniel J. O'Brien, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), C. Holly Buckley (Joanne L. Suder, Suder & Suder, on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

This appeal arises from a medical malpractice action filed in the Health Claims Arbitration Office ("HCAO"). *See* Maryland Code (1973, 1995 Repl.Vol. & Cum.Supp.), §§ 3–2A–01 et seq. of the Courts and Judicial Proceedings Article ("the Health Care Malpractice Claims Act" or "the Act"). The issue we must decide is whether the petitioners, Kenneth M. Goodwich, M.D. and Kenneth M. Goodwich, M.D., P.A. (hereinafter "the petitioners" or "Dr. Goodwich"), properly instituted a mandamus action in the Circuit Court for Baltimore City to obtain judicial review of a HCAO discovery order compelling deposition testimony concerning the findings and recommendations of a medical review committee. The circuit court denied the petitioners' request for mandamus relief. On appeal, the Court of Special Appeals affirmed the judgment of the circuit court. *Goodwich v. Nolan* ("*Goodwich I* "), 102 Md.App. 499, 650 A.2d 296 (1994). At the petitioners' request, we issued the writ of certiorari and now affirm the judgment of the Court of Special Appeals.

### I.

The medical malpractice action out of which this case arose was initiated by Sharon Brooks, individually and as parent, guardian, and next friend of her son, Jamaal Brooks, in the Health Claims Arbitration Office, against Dr. Goodwich, Sinai Hospital of Baltimore, Inc. ("Sinai Hospital"), Health Care Corporation of the Mid–Atlantic ("Carefirst"), and Potomac Physicians, P.A. ("Potomac") for alleged negligent surgical and obstetrical care resulting in Jamaal's birth, in December 1988, with severe brain damage. In addition to claims of primary

medical negligence against Dr. Goodwich, vicariously imputed to the other health care providers, Ms. Brooks also brought claims of corporate liability against Sinai Hospital, Carefirst and Potomac based on theories of negligent supervision and credentialing. Paul W. Nolan, Esquire, the respondent ("the panel chair"), the chair of the arbitration panel assigned to the case, later bifurcated the latter claims.

While in the discovery phase of the HCAO proceeding, Ms. Brooks deposed Dr. Goodwich and two former Sinai Hospital employees, Rebecca Brown, R.N., and Dr. Mary Anne Lathrop, both of whom had been involved in Ms. Brooks's care. During Dr. Goodwich's deposition, Ms. Brooks's attorney asked a series of questions regarding alleged disciplinary restrictions imposed on Dr. Goodwich's staff privileges at Sinai Hospital, including, *inter alia*, whether he was "required at Sinai Hospital to obtain second opinions for patients," [1] whether his medical license ever had been suspended, revoked or curtailed, in any way, while Ms. Brooks was his patient, and whether he ever had been discharged from Sinai's HMO. Ms. Brooks's attorney also questioned Dr. Goodwich about alleged communication problems with other patients.

Dr. Goodwich refused to answer this line of questioning, contending that it infringed upon the protections of the medical peer review privilege as set forth in Maryland Code (1981, 1994 Repl. Vol, 1995 Cum.Supp.), § 14–501(d) of the Health Occupations Article. That section provides, in pertinent part:

> [T]he proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action arising out of matters that are being reviewed and evaluated by the medical review committee.[2]

---

1. This question, we presume, was intended to elicit whether Dr. Goodwich had been required to obtain second opinions regarding proper patient care.

2. At Sinai Hospital, and similar health care institutions, the decisions regarding the revocation, suspension or extension of a physician's staff privileges are made and enforced by a committee of medical profession-

Ms. Brooks's attorney asked Ms. Brown and Dr. Lathrop similar questions in their subsequent depositions. They were asked whether they knew if Dr. Goodwich's privileges had been suspended or curtailed, in any way, while he was caring for Ms. Brooks, and whether they knew if Dr. Goodwich had been required to obtain second opinions. Like Dr. Goodwich's attorney, and for the same reason, the attorney for Sinai Hospital instructed Ms. Brown and Dr. Lathrop not to answer the questions.

Dr. Goodwich and Sinai Hospital having raised claims of privilege, Ms. Brooks's attorney filed a motion with the panel chair to compel the deponents to answer the questions. After reviewing the briefs submitted by Ms. Brooks and Dr. Goodwich, the panel chair, in an order issued on June 22, 1993, granted Ms. Brooks's motion.[3] The order stated the basis for

---

als encompassed within the definition of a "medical review committee." *Maryland Code* (1981, 1994 Repl.Vol., 1995 Cum.Supp.), § 14–501(b)(5) of the Health Occupations Article, defines a "medical review committee" as:

> A committee of the medical staff or other committee, including any risk management, credentialing, or utilization review committee established in accordance with § 19–319 of the Health General Article, of a hospital, related institution, or alternative health care system, if the governing board of the hospital, related institution, or alternative health care system forms and approves the committee or approves the written by laws under which the committee operates....

Section 14–501(c) prescribes the functions of a medical review committee:

> (1) Evaluates and seeks to improve the quality of health care provided by providers of health care;
> (2) Evaluates the need for and the level of performance of health care provided by providers of health care;
> (3) Evaluates the qualifications, competence, and performance of providers of health care; or
> (4) Evaluates and acts on matters that relate to the discipline of any provider of health care.

3. The panel chair's authority to resolve discovery disputes is derived from Maryland Code (1973, 1995 Repl.Vol. & Cum.Supp.), § 3–2A–05(c) of the Courts and Judicial Proceedings Article. That section provides, in pertinent part:

> The attorney member of the panel shall be chairman and he shall decide all prehearing procedures including issues relating to discovery and motions in limine.

his decision, namely his belief, given the authorities submitted, that the information Ms. Brooks sought did not constitute the " 'proceedings, records, and files of a medical review committee[,]' " (quoting § 14–501(d)(1)). The panel chair concluded, therefore, that § 14–501(d)(1) did not preclude discovery of the information. While noting that there were no Maryland appellate cases directly addressing the issue, the panel chair, nevertheless, was persuaded by the analysis adopted by the Supreme Court of Rhode Island in *Moretti v. Lowe,* 592 A.2d 855 (R.I.1991).[4] Moreover, he stressed that while he found the requested information discoverable, he was not ruling, nor did he intend to imply, that the information would be admissible at a hearing on the merits.[5]

Dr. Goodwich filed a motion for reconsideration of the panel chair's discovery order. The motion was denied. Meanwhile, Ms. Brooks having filed another motion to compel him to appear for a supplemental deposition, Dr. Goodwich filed a motion for a protective order asking the panel chair to stay all discovery while he pursued mandamus relief in the Circuit Court for Baltimore City. The panel chair granted the motion and ordered all discovery stayed for 60 days to allow Dr. Goodwich to seek mandamus relief.

Thereafter, Dr. Goodwich filed, in the circuit court, a Verified Complaint Seeking Writ of Mandamus, naming the panel

---

4. In *Moretti v. Lowe,* 592 A.2d 855 (R.I.1991), the plaintiffs in a medical malpractice action sought to discover information regarding whether the defendant physician's staff privileges had ever been restricted, revoked or curtailed at any hospital and, if so, the reasons therefor. The defendant refused to answer on the grounds of Rhode Island's peer review privilege, which states in relevant part, "[n]either the proceedings nor the records of peer review boards as defined in § 5–37–1 shall be subject to discovery...." Gen. Laws 1956 (1989 Reenactment), § 23–17–25. The Rhode Island Supreme Court held that "the fact that privileges have been lost or restricted is highly relevant and material evidence in a medical malpractice action ... [and] is not privileged...." *Id.* at 858.

5. Shortly after the panel chair issued the order compelling the production of the discovery information, Ms. Brooks reached a settlement of her claims with Sinai Hospital. Therefore, Sinai was dismissed from the case and is not a party to these proceedings.

chair and the HCAO, through its director, Walter R. Tabler [6], as defendants. In that complaint, he sought to have the court prevent the panel chair and/or the HCAO from "compelling production of statutorily privileged medical peer review information in violation of Maryland law." The panel chair and Mr. Tabler filed a motion to dismiss Dr. Goodwich's mandamus action, arguing that mandamus will not lie when a fully adequate statutory remedy is available after the HCAO makes a final award, that Dr. Goodwich's complaint was interlocutory, and that mandamus relief is inappropriate to direct a party to exercise judgment that is discretionary. The circuit court granted the motion, adopting as the reasons for the dismissal, those enumerated in the defendants' motion to dismiss.

Following the circuit court's dismissal of his complaint, Dr. Goodwich appealed to the Court of Special Appeals.[7] That court, as previously noted, affirmed the judgment of the circuit court. *Goodwich v. Nolan, supra,* 102 Md.App. at 514, 650 A.2d at 303. In explaining the basis for its decision, the Court of Special Appeals's opinion emphasized the discretionary nature of the panel chair's order, which, it concluded, made mandamus relief inappropriate. The intermediate appellate court also noted that judicial review of HCAO orders after issuance of a final award provided Dr. Goodwich with an adequate remedy. *Id.* at 507–09, 650 A.2d at 299–301. Finally, the court was satisfied that Dr. Goodwich had other measures available during HCAO discovery, including the use of a protective order, to prevent disclosure of peer review information. As a further basis for rejecting mandamus, the

---

6. Mr. Tabler, who retired as HCAO Director subsequent to the institution of this litigation, was replaced by Henry J. Raymond, the interim Director. The present Director, Harry L. Chase, was subsequently joined as a party. The issue of the appropriateness of the joinder of the HCAO Director was not raised by the petitioner in this Court, and consequently, we do not consider it.

7. Ms. Brooks was not a named defendant in the circuit court action. She moved to intervene in the proceedings after the circuit court dismissed the mandamus action.

court noted that the panel chair's discovery order was not immediately appealable under the collateral order doctrine, *id.* at 510–12, 650 A.2d at 301–02, and that the writ of mandamus did not meet the prerequisites of that doctrine. As previously noted, we granted Dr. Goodwich's petition for writ of certiorari to consider the important issues raised in this case.

## II.

### A.

Dr. Goodwich asserts that the test for assessing the propriety of issuing a writ of mandamus during an ongoing HCAO proceeding is " 'where there is no other available procedure for obtaining review, *or* where the action complained of is arbitrary and capricious[,]' " (quoting *Goodwich I, supra,* 102 Md.App. at 506, 650 A.2d at 299, quoting, in turn, *Weidig v. Tabler,* 81 Md.App. 488, 491, 568 A.2d 868, 870 (1990), *cert. granted sub nom. Kies v. Tabler,* 319 Md. 632, 574 A.2d 312, *vacated as moot,* 321 Md. 1, 580 A.2d 701 (1990)). He further asserts that the Court of Special Appeals has misapplied the test in this case. Specifically, he contends that the intermediate appellate court erred in concluding that "[a] party aggrieved by a decision of the HCAO may seek review in the circuit court only *after* the HCAO has issued a final award[,]" *id.* at 509, 650 A.2d at 301, and in holding that the post-arbitration procedure for vacating an HCAO arbitration award under § 3–2A–06 of the Act provides an adequate remedy in this case. *Id.* Dr. Goodwich also contends that the Court of Special Appeals erred in concluding that procedural protections, such as a protective order limiting Ms. Brooks's use of the discovered peer review information, or alternatively, placing that information under seal to preserve its confidentiality during the pendency of the HCAO proceeding, provide him sufficient protection.

In Dr. Goodwich's view, vacating an ultimate HCAO award would fail to protect privileged peer review information from initial disclosure during discovery. Thus, he claims that once privileged information is produced in discovery, its confi-

dentiality is forever compromised, rendering any post-arbitration motion to vacate the award insufficient to redress the wrong. Furthermore, he claims that the use of a protective or seal order would, at best, limit the degree to which peer review confidentiality would be compromised, but would not prohibit the disclosure of the confidential information to Ms. Brooks, or its subsequent review and use by her to pursue her claims. For these reasons, Dr. Goodwich contends that mandamus is the only adequate procedural vehicle available to him by which to obtain effective judicial review of the disputed discovery order. Moreover, he asserts that the circuit court's exercise of mandamus jurisdiction during an HCAO proceeding is consistent with Maryland's application of the collateral order doctrine.[8]

---

8. The collateral order doctrine is an exception to the final judgment rule. *Public Service Commission v. Patuxent Valley,* 300 Md. 200, 206, 477 A.2d 759, 762 (1984). To fall within the ambit of this exception, an order must satisfy four requirements:

> "(1) it must conclusively determine the disputed question;
>
> (2) it must resolve an important issue;
>
> (3) it must be completely separate from the merits of the action; and
>
> (4) it must be effectively unreviewable on appeal from a final judgment."

*Montgomery County v. Stevens,* 337 Md. 471, 477, 654 A.2d 877, 880 (1995) (quoting *Town of Chesapeake Beach v. Pessoa,* 330 Md. 744, 755, 625 A.2d 1014, 1019 (1993)); *see also Peat, Marwick, Mitchell & Co. v. The Los Angeles Rams Football Company,* 284 Md. 86, 92, 394 A.2d 801, 804 (1978).

Dr. Goodwich's argument that the exercise of mandamus jurisdiction during pending HCAO proceedings is consistent with the collateral order doctrine focuses primarily on the fourth of that doctrine's prerequisites, upon which he heavily relies. He submits that, unless the ruling is reviewed on mandamus, disclosure of the privileged information already will have occurred when his right to judicial review will have matured, rendering that right inadequate. Dr. Goodwich's reliance is misplaced.

In Maryland, "discovery orders, being interlocutory in nature, are not ordinarily appealable prior to a final judgment terminating the case...." *Montgomery County, supra,* 337 Md. at 477, 654 A.2d at 880. *See also Department of Social Services v. Stein,* 328 Md. 1, 7 & 18, 612 A.2d 880, 883 & 888 (1992); *Patuxent Valley, supra,* 300 Md. at 207, 477 A.2d at 763; *Electronic Data Systems Federal Corp. v. Westmoreland Associates,* 311 Md. 555, 556, 536 A.2d 662, 663 (1988); *Price v. Orrison,* 261 Md. 8, 9, 273 A.2d 183, 184 (1971). The rationale

underlying the rule was stated in *Alford v. Motor Vehicles Commissioner*, 227 Md. 45, 47, 175 A.2d 23, 24 (1961): "Ordinarily, an order granting or denying discovery does not finally determine the rights of any party and, therefore, no appeal lies from such an order unless it is tantamount to a denial of the means of further prosecuting the case." In *Patuxent Valley*, we added:

> Also, in the usual case, the party or individual opposing the discovery order does not suffer sufficient immediate harm to warrant an appeal prior to the final termination of the litigation. Moreover, a party is generally able to seek effective review of the order upon an appeal from an adverse final judgment terminating the case.

*Id.* at 208, 477 A.2d at 763. That case also carved out a narrow exception for discovery orders directed at high level government officials, holding that "an order in an action for judicial review of an administrative decision, requiring administrative decision makers to stand for depositions, may be immediately appealed by the agency itself or, if a party, by the government of which the agency is a part." *Id.* at 210, 477 A.2d at 764. *See also Stein, supra*, 328 Md. at 18–19, 612 A.2d at 888–89.

This Court has also recognized a rule enunciated by the United States Supreme Court in *Alexander v. United States*, 201 U.S. 117, 121–22, 26 S.Ct. 356, 358, 50 L.Ed. 686, 688 (1906); *Kaufman v. Edelstein*, 539 F.2d 811, 813 (2d Cir.1976) (citing 9 Moore, *Federal Practice* ¶ 110.13[2] at 153–54 (Ward ed. 1975)), namely, that in the case of a discovery order directed at a party who is not a high level government official, review in advance of the entry of the final order terminating the action may be had only if that party subjects him or herself to a finding of contempt of that order. *Stein, supra*, 328 Md. at 14–16, 612 A.2d at 886–87; *Sigma Repro. Health Center v. State*, 297 Md. 660, 671–74, 467 A.2d 483, 488–90 (1983). Thus, "[t]he remedy of the party witness wishing to appeal is to refuse to answer and subject himself to criminal contempt; that of the non-party witness is to refuse to answer and subject himself to civil or criminal contempt." *Id.* We explained the rationale for the rule in *Sigma Repro. Health Center, supra*, 297 Md. at 671, 467 A.2d at 488, as follows:

> [O]nly an appeal from a contempt order, as opposed to an order to produce documents pursuant to the subpoena [or, as in this case, to answer deposition questions], is final enough and separable enough from the merits to confer the power of review on an appellate court.

In the case *sub judice*, Dr. Goodwich's argument that, without mandamus, review following the entry of a final order terminating the action will be ineffective, is premised upon there being a necessity for a different rule when the issue which is the subject of the discovery order involves the applicability of a statutory privilege. We are not persuaded. In our opinion, the nature of the information sought to be discovered does not change the analysis. Whatever its nature, a party aggrieved has the means of obtaining review in advance of the final judgment, albeit it may involve subjecting him or herself to a contempt citation. Any other result would undermine the purpose of the finality rule to prevent piecemeal appeals and the interruption of ongoing judicial

Alternatively, Dr. Goodwich argues that, even if this Court were to conclude that he has an adequate remedy other than mandamus, such as judicial review of the HCAO award, it still must review the panel chair's decision for the presence of " 'arbitrary, capricious, unreasonable or illegal actions taken by the [sic] inferior tribunal[,]' " (quoting *Dorchester General Hospital v. Sober*, 79 Md.App. 110, 115, 555 A.2d 1074, 1077 (1989)). Accordingly, he contends that the panel chair acted arbitrarily, in dereliction of his duties under the Act, as reflected by his misapplication and misinterpretation of § 14–501(d)(1) as not embracing the ultimate findings and recommendations of the medical review committee. He claims that the *Moretti* decision, upon which the panel chair relied in ordering the disclosure, did not provide a proper basis upon which to interpret Maryland's peer review privilege. Instead, he focuses on this Court's construction of the privilege in *Baltimore Sun v. University of Maryland Medical System*, 321 Md. 659, 584 A.2d 683 (1991). In that case, we stated that the statute is premised on a "legislative appreciation that a high level of confidentiality is necessary for effective medical peer review[,]" *id.* at 668, 584 A.2d at 687, and that § 14–501(d) provides an "all encompassing" peer review privilege. *Id.* at 670, 584 A.2d at 688 (Rodowsky, J. concurring).

## B.

Ms. Brooks sees matters quite differently. Her opinion, as was the Court of Special Appeals's, is that judicial review is available to Dr. Goodwich only upon the completion of the HCAO arbitration proceeding. At that time, she submits, he could seek to have the arbitration award vacated. She further echoes the intermediate appellate court's view of the matter by arguing that Dr. Goodwich could have sought a protective order to safeguard what he deemed to be confidential informa-

proceedings. *See Sigma Repro. Health Center, supra,* 297 Md. at 665, 467 A.2d at 485.

tion. She also asserts that mandamus is not justified in this case under the collateral order doctrine because, *inter alia,* the discovery order did not conclusively resolve any aspect of the arbitration proceeding and because the order is not distinct from the merits of the case.[9]

In this case, Ms. Brooks asserts, the underlying discovery decision involved an exercise of discretion; the panel chair was required first to decide whether to compel discovery, *see* Maryland Rule 2–432, and upon deciding to compel discovery, to choose the appropriate sanction, in the event of noncompliance. *See* Maryland Rule 2–433. For this reason, then, she contends that mandamus does not lie. Also, Ms. Brooks rejects Dr. Goodwich's claim that the panel chair acted arbitrarily. On the contrary, she says that he exercised appropriate judgment and discretion in concluding that the information she sought did not constitute the "proceedings, records and files of a medical review committee." She thus argues that, rather than to shield the subject(s) of peer review discussions, Maryland's peer review statute, like that of many other states, was designed to provide immunity from liability for those person who give information to, participate in, or contribute to the functioning of a medical review committee.[10]

---

**9.** We note that Ms. Brooks, and the State, responding on behalf of the panel chair, both assert that Dr. Goodwich's commencement of litigation against Sinai Hospital, in which he claimed to be aggrieved by the restrictions the Medical Executive Committee imposed on his staff privileges, *see Goodwich v. Sinai Hospital,* 103 Md.App. 341, 653 A.2d 541 (1995), *cert. granted,* 339 Md. 445, 663 A.2d 1271 (1995) (*"Goodwich II "*), has resulted in a waiver of any claimed privilege, thereby rendering moot the issue of whether Mr. Nolan improperly compelled discovery. We do not believe this issue is moot because whether Dr. Goodwich is entitled to immediate mandamus review of a discovery order involving a claim of privilege is still justiciable. While indeed some of the substantive matters involving what was sought on discovery may be rendered moot by *Goodwich II,* such matters do not constitute the full extent of our inquiry in this case.

**10.** In its brief submitted on behalf of Mr. Nolan, the State raised essentially the same counter-arguments as did Ms. Brooks; therefore, we will not treat them separately here.

## III.

### A.

We begin our analysis in this case with a brief review of the common law writ of mandamus. "Mandamus is an original action, as distinguished from an appeal." 52 Am.Jur.2d *Mandamus* § 4 (1970) (footnote omitted). It is "not a substitute for appeal or writ of error." *In re Petition for Writ of Prohibition,* 312 Md. 280, 306, 539 A.2d 664, 676 (1988). It is, however, "an extraordinary remedy[,]" *Ipes v. Board of Fire Commissioners of Baltimore,* 224 Md. 180, 183, 167 A.2d 337, 339 (1961), "that . . . will not lie if [there is] any other adequate and convenient remedy[.]" *A.S. Abell Co. v. Sweeney,* 274 Md. 715, 718, 337 A.2d 77, 79 (1975) (quoting *Applestein v. Baltimore,* 156 Md. 40, 45, 143 A. 666, 668 (1928)). Mandamus is generally used "to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right." *Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 514, 331 A.2d 55, 72 (1975); *see also George's Creek Coal & Iron Co. v. County Commissioners,* 59 Md. 255, 259 (1883). The writ ordinarily does not lie where the action to be reviewed is discretionary or depends on personal judgment. *Board of Education of Prince George's County v. Secretary of Personnel,* 317 Md. 34, 46, 562 A.2d 700, 706 (1989); *In re Petition, supra,* 312 Md. at 305–06, 539 A.2d at 676; *see also Tabler v. Medical Mutual Liability Insurance Society,* 301 Md. 189, 202 n. 7, 482 A.2d 873, 880 n. 7 (1984); *Bovey v. Executive Director, HCAO,* 292 Md. 640, 646, 441 A.2d 333, 337 (1982); *Maryland Action for Foster Children v. State,* 279 Md. 133, 138–39, 367 A.2d 491, 494 (1977);

In its opinion, the Court of Special Appeals states that "[m]andamus is . . . reserved only for those instances 'where there is no other available procedure for obtaining review, *or* where the action complained of is arbitrary and capricious.'" *Goodwich I, supra,* 102 Md.App. at 506, 650 A.2d at 299

(quoting *Weidig, supra,* 81 Md.App. at 491, 568 A.2d at 870) (emphasis added); *see also Dorchester General Hospital, supra,* 79 Md.App. at 115, 555 A.2d at 1076–77. As we have seen, it is this statement of the test of the availability of mandamus that provides the very foundation on which Dr. Goodwich's claim is built. It does not, however, comport with our mandamus jurisprudence.

This Court has stated that judicial review is properly sought through a writ of mandamus "where there [is] no statutory provision for hearing or review *and* where public officials [are] alleged to have abused the discretionary powers reposed in them." [11] *State Department of Health v. Walker,* 238 Md. 512, 522–23, 209 A.2d 555, 561 (1965) (emphasis added). *See also State Department of Assessments and Taxation v. Clark,* 281 Md. 385, 399, 380 A.2d 28, 36–37 (1977); *Gould, supra,* 273 Md. at 502, 331 A.2d at 65; *State Insurance Commissioner v. National Bureau of Casualty Underwriters,* 248 Md. 292, 300, 236 A.2d 282, 286 (1967); *Heaps v. Cobb,* 185 Md. 372, 380, 45 A.2d 73, 76 (1945). Thus, prior to granting a writ of mandamus to review discretionary acts, there must be both a lack of an available procedure for obtaining review *and* an allegation that the action complained of is illegal, arbitrary, capricious or unreasonable.[12] Were it as the Court of Special Appeals has held and Dr. Goodwich argues, one conceivably could obtain a writ of mandamus simply by alleging arbitrary and capricious action. Obtaining mandamus with such ease, however, does not promote judicial efficiency and does not comport with the status of the writ of mandamus as an

---

**11.** The Court further stated that "[d]ecisions contrary to law or unsupported by substantial evidence are not within the exercise of sound ... discretion, but are arbitrary and illegal acts." *State Department of Health v. Walker,* 238 Md. 512, 523, 209 A.2d 555, 561 (1965); *Hammond v. Love,* 187 Md. 138, 144, 49 A.2d 75, 77 (1946).

**12.** Although this principle is not presently adhered to by the Court of Special Appeals, it is one that the court formerly recognized. In *Prince George's County v. Carusillo,* 52 Md.App. 44, 50, 447 A.2d 90, 94 (1982), the intermediate appellate court opined, "[t]he writ will lie if no statutory provision for a hearing or review exists and public officials are alleged to have abused their discretion."

extraordinary writ. Nor is that what our cases say or intend. *E.g., Doering v. Fader,* 316 Md. 351, 361, 558 A.2d 733, 738 (1989) ("We have acknowledged that the power to issue an extraordinary writ of mandamus is one which ought to be exercised with great caution."); *In re Petition, supra,* 312 Md. at 305, 539 A.2d at 676 (same); *see also Keene Corporation v. Levin,* 330 Md. 287, 294, 623 A.2d 662, 665 (1993).

Our mandamus jurisprudence is illustrated both by those cases in which we have granted the writ, as well as those in which we have refused to issue it. For example, in *Maryland–National Capital Park and Planning Commission v. Rosenberg,* 269 Md. 520, 307 A.2d 704 (1973), we held that mandamus relief was appropriate because there was no statutory provision for judicial review and because the Planning Commission acted arbitrarily and capriciously in refusing to approve a plan for the subdivision of a piece of property. *Id.* at 529–31, 307 A.2d at 708–10. In *Walker, supra,* mandamus was granted in the absence of provision for hearing or review and where the issuance of sewage disposal permits was arbitrarily denied. 238 Md. at 522–23, 209 A.2d at 561. In *Heaps, supra,* again we found mandamus relief warranted in the absence of provision for judicial review and where the Board of Trustees of the Employees' Retirement System arbitrarily denied a pension claim by a member's widow. 185 Md. at 379–86, 45 A.2d at 76–79.

In *Bovey, supra,* the petitioners sought a writ of mandamus to compel the Director of the HCAO to inquire of potential arbitration panelists whether they had an economic relationship with the health care providers whose cases they would be deciding. We denied relief on the basis that the Director was free to exercise discretion in assuring the impartiality of panelists; therefore, mandamus would not lie to compel him to follow a specific procedure. 292 Md. at 649, 441 A.2d at 338. We also stated that judicial review existed to correct any such errors on the Director's part. *Id.* In *Stark v. State Board of Registration,* 179 Md. 276, 19 A.2d 716 (1941), we refused to grant mandamus relief to a petitioner who sought to compel the Board of Registration for Professional Engineers and

Land Surveyors to issue a license to him, because the record contained no evidence that the Board failed to act or acted arbitrarily and, more importantly, because he failed to exhaust his statutory right of review. *Id.* at 283–85, 19 A.2d at 719–20.

### B.

Having thus articulated the appropriate rule of law, we proceed to the substance of Dr. Goodwich's claims. Because Dr. Goodwich's refusal to comply with the panel chair's discovery ruling rests on a claim of privilege, he contends that mandamus provides him the only available procedural avenue for effective judicial review of the order. We disagree. To be sure, as we have seen, courts have the right to review the discretionary decisions reached in quasi-judicial proceedings for arbitrariness, illegality or capriciousness. *Maryland Aggregates Association v. State,* 337 Md. 658, 678, 655 A.2d 886, 896 (1995); *Baltimore Import Car Service and Storage v. Maryland Port Authority,* 258 Md. 335, 342, 265 A.2d 866, 869 (1970); *State Insurance Commissioner, supra,* 248 Md. at 300, 236 A.2d at 286; *Heaps, supra,* 185 Md. at 379, 45 A.2d at 76; *Hecht v. Crook,* 184 Md. 271, 280, 40 A.2d 673, 677 (1945). They also have the inherent power to correct any such abuses of authority "through the writ of mandamus, by injunction or otherwise[.]" *Id.* at 280, 40 A.2d at 677. Yet, there is no occasion to utilize the writ, thus it does not apply, where a statutory right of judicial review exists. *See, e.g., Gould, supra,* 273 Md. at 503, 331 A.2d at 66; *Rosenberg, supra,* 269 Md. at 529, 307 A.2d at 708–09; *Walker, supra,* 238 Md. at 522–23, 209 A.2d at 561. The mere fact that a claim of privilege is raised in a mandamus petition does not change the analysis.

In the instant case, the Act represents a comprehensive statutory scheme, adopted by the General Assembly in 1976 as part of Maryland's response to the medical malpractice insurance crisis. *Tabler, supra,* 301 Md. at 192, 482 A.2d at 875, *Bovey, supra,* 292 Md. at 641, 441 A.2d at 334; *Attorney General v. Johnson,* 282 Md. 274, 277, 385 A.2d 57,

59, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), *disapproved on other grounds, Newell v. Richards,* 323 Md. 717, 734, 594 A.2d 1152, 1161 (1991). *See* ch. 235, Acts of 1976. While it provides for the submission of certain medical malpractice claims to arbitration,[13] it also provides for judicial review of final HCAO decisions.[14] *Johnson, supra,* 282 Md. at

---

**13.** As first enacted, it was contemplated, and, therefore, the Health Claims Arbitration Act, Maryland Code (1973, 1995 Repl.Vol. and Cum.Supp.), §§ 3–2A–01 et seq. of the Courts and Judicial Proceedings Article, provided that medical malpractice claims must be arbitrated. *See* ch. 235, Acts of 1976. The Act was amended in 1987 to permit the parties to "agree mutually to waive arbitration." *See* ch. 596, Acts of 1987, adding § 3–2A–06A.

Effective October 1, 1995, the Act was again amended with respect to waiver, *see* ch. 582, Acts of 1995, this time to add a new § 3–2A–06(B). Subsection (a) of that section provides:

*In general.*—Arbitration of a claim with the Health Claims Arbitration Office may be waived by the claimant or any defendant in accordance with this section, and the provisions of this section shall govern all further proceedings on any claim for which arbitration has been waived under this section.

This provision is prospective only, applying to those claims arising after October 1, 1995. As a result of this amendment, waiver of arbitration no longer requires the mutual agreement of the parties; it may be accomplished unilaterally, by either the claimant(s) or defendant(s), after the claimant has filed the certificate of qualified expert required by § 3–2A–04(b).

**14.** Once the HCAO renders a final award, judicial review may be instituted under § 3–2A–06 of the Courts and Judicial Proceedings Article. First, the rejecting party must file a notice of rejection with the Director and the arbitration panel within a specified time. Subsection (a). In addition, the rejecting party must file an action in circuit court to nullify the award. Subsection (b). If, however, the rejecting party also seeks, on specified grounds, to modify, correct or vacate the award, or the assessment of costs, a preliminary motion must be filed pursuant to § 3–2A–06(c). That section provides, in pertinent part:

(c) *Modification, correction, or vacation of award or assessment of costs by court.*—An allegation by any party that an award or the assessment of costs under an award is improper because of any ground stated in § 3–223(b) or § 3–224(b)(1), (2), (3), or (4) or § 3–2A–05(h) of this article shall be made by preliminary motion, and shall be determined by the court without a jury prior to trial. Failure to raise such a defense by pretrial preliminary motion shall constitute a waiver of it. If the court finds that a condition stated in § 3–223(b) exists, or that an award was not appropriately modified in accordance with § 3–2A–05(h) of this subtitle, it shall modify or correct the award or the assessment of costs under an award. If the rejecting

280 & 287, 385 A.2d at 60–61 & 65. Moreover, in fashioning the statutory scheme, the Legislature directed, in the Act, that the attorney member of the three-person arbitration panel serve as "panel chair," in whom was vested the power to decide "all prehearing procedures including issues relating to discovery . . . ." § 3–2A–05(c), Cts. & Jud. Proc. (1995 Repl. Vol. & Cum.Supp.).

Therefore, it is foreseeable that, in the course of resolving discovery disputes, panel chairs will be called upon to consider, and settle, matters involving privileges. Thus, the Legislature's decision to prescribe, as part of the statutory scheme, that judicial review occur *after* a final HCAO decision is reached evinces, as the Court of Special Appeals observed, *see Goodwich I, supra,* 102 Md.App. at 507, 650 A.2d at 300, a legislative intent to prevent interruption of ongoing HCAO proceedings. *See also Dorchester General Hospital, supra,* 79 Md.App. at 118, 555 A.2d at 1078. Accordingly, because the General Assembly has empowered the panel chair with the authority to resolve discovery disputes, it would be improper for us to grant mandamus relief until such time as it amends the statutory scheme. To issue the writ of mandamus in the instant case, under the present statutory scheme, would permit not only the interruption of HCAO proceedings whenever

party still desires to proceed with judicial review, the modified or corrected award shall be substituted for the original award. If the court finds that a condition stated in § 3–224(b)(1), (2), (3), or (4) exists, it shall vacate the award, and trial of the case shall proceed as if there had been no award.

Section 3–224(b) of the Courts and Judicial Proceedings Article, incorporated by reference into § 3–2A–06(c), also applies in HCAO matters and provides that an arbitration award may be vacated, *inter alia,* on the following grounds:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing . . . as to prejudice substantially the rights of a party. . . .

a panel chair makes a controversial discovery ruling, but also would erode substantially the very authority vested in the panel chair.

Requiring that HCAO proceedings be final before a party to them may obtain judicial review is likewise consonant with the exhaustion of administrative remedies doctrine, which states that, with rare exceptions, one cannot seek judicial review until a final administrative decision is reached. *See, e.g., Montgomery County v. Ward,* 331 Md. 521, 526–27, 629 A.2d 619, 621–22 (1993); *Holiday Spas v. Montgomery County,* 315 Md. 390, 395, 554 A.2d 1197, 1199 (1989); *Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860, 865 (1982); *see also Maryland–National Capital Park and Planning Commission v. Crawford,* 307 Md. 1, 12–17, 511 A.2d 1079, 1084–87 (1986) (discussing exhaustion of administrative remedies in the civil rights context); *Maryland Commission on Human Relations v. Mass Transit Administration,* 294 Md. 225, 235, 449 A.2d 385, 390 (1982). Although an HCAO arbitration panel is not "an administrative agency in the traditional sense[,]" *Johnson, supra,* 282 Md. at 285, 385 A.2d at 63, it clearly operates in a quasi-judicial capacity such that we find administrative law principles sufficiently analogous to apply them here. *See Oxtoby,* 294 Md. at 91, 447 A.2d at 865 ("[T]he legislative mandate that the arbitration procedure under the [Health Care Malpractice Claims] Act be followed as a precondition to invoking the general jurisdiction of a court is analogous to the doctrine of exhaustion of administrative remedies."). In sum, because statutory review is available under the Act, we conclude that mandamus is not warranted in this case. In so holding, we are not, as Dr. Goodwich claims, denying him access to the judiciary. We simply are requiring that he wait until the appropriate time to obtain the judicial review to which he is entitled.

Having already determined it to be ill-founded, we need not further address Dr. Goodwich's argument that even if we find that he has an adequate statutory remedy, we must still review the panel chair's discovery ruling for the presence of

arbitrary, capricious or unreasonable action. We also decline, as did the Court of Special Appeals, to address the substantive issue of whether the ultimate findings and conclusions of a medical review committee are privileged under § 14–501(d)(1). *Goodwich I, supra,* 102 Md.App. at 510 & n. 8, 650 A.2d at 301 & n. 8.[15]

■■■ Like the Court of Special Appeals, we believe that Dr. Goodwich had other options open to him, short of mandamus, to protect what he believed to be privileged peer review information. Specifically, he could have sought a protective order requesting that certain matters not be inquired into, or limiting who had access to the information, or requesting that the scope of discovery be limited. *See* Maryland Rule 2–403. That rule is applicable in health claims arbitration proceedings pursuant to § 3–2A–05(b)(2) of the Courts and Judicial Proceedings Article. It states, in part, "[e]xcept for the provisions of the Maryland Rules relating to time for the completion of discovery, the provisions of the Maryland Rules relating to discovery are applicable to proceedings under this subtitle." In addition, he also could have asked the court to place the depositions under seal pursuant to § 2–403(a)(7).[16]

---

**15.** Those of our sister jurisdictions that have decided this issue have reached differing conclusions. Some courts have held that the findings and recommendations of peer review committees are within the purview of the privilege. *See, e.g., Beth Israel Hospital v. District Court,* 683 P.2d 343, 346 n. 2 (Colo.1984); *Segal v. Roberts,* 380 So.2d 1049, 1052 (Fla.Dist.Ct.App.1979); *Patton v. Mishra,* No. 83–274–II (Tenn.Ct. App., Mar. 9, 1984); *Harris Hospital v. Schattman,* 734 S.W.2d 759, 761 (Tex.Ct.App.1987). Conversely, other courts have concluded that their statutes do not apply to information regarding the status of hospital privileges. *See, e.g., Richter v. Diamond,* 108 Ill.2d 265, 91 Ill.Dec. 621, 483 N.E.2d 1256, 1258 (1985); *Payne v. Nicholas,* 156 Ill.App.3d 768, 108 Ill.Dec. 851, 509 N.E.2d 547, 554 (1987); *Moretti, supra,* 592 A.2d at 858; *Anderson v. Breda,* 103 Wash.2d 901, 700 P.2d 737, 741 (1985); *State ex rel. Good Samaritan Medical Center–Deaconess v. Maroney,* 123 Wis.2d 89, 365 N.W.2d 887, 893 (1985).

**16.** Maryland Rule 2–403(a) provides, in pertinent part:

(a) *Motion.*—On motion of a party or of a person from whom discovery is sought, and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,

## C.

Although we have concluded that mandamus relief is inappropriate in this case, we pause momentarily to address the issue of the applicability of the collateral order doctrine to the writ of mandamus. The Court of Special Appeals apparently assumes that, to qualify for judicial review in the circuit court, Dr. Goodwich's mandamus petition must have satisfied the requirements of the collateral order doctrine. *See Goodwich, supra,* 102 Md.App. at 511, 650 A.2d at 302. For a delineation of those requirements, see note 8 *supra.* It is clear, however, that the petition need not have met the requirements of the collateral order doctrine. In fact, it is crystalline that this simply is not a collateral order doctrine case.

▬ The collateral order doctrine was first recognized by the United States Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1536–37 (1949), and subsequently adopted by this Court. *See, e.g., Montgomery County v. Stevens,* 337 Md. 471, 477, 654 A.2d 877, 880 (1995); *Town of Chesapeake Beach v. Pessoa,* 330 Md. 744, 754–55, 625 A.2d 1014, 1019 (1993); *Department of Social Services v. Stein,* 328 Md. 1, 10, 612 A.2d 880, 884 (1992); *Harris v. Harris,* 310 Md. 310, 315, 529 A.2d 356, 358 (1987); *Public Service Commission v. Patuxent Valley,* 300 Md. 200, 206, 477 A.2d 759, 762 (1984); *Kawamura v. State,* 299 Md. 276, 282 n. 5, 473 A.2d 438, 442 n. 5 (1984). It applies to a "narrow class of orders, referred to as collateral orders, which are offshoots of the principal litigation in which they are issued and which are immediately appealable as 'final judgments' without regard to the posture of the case." *Montgomery County, supra,* 337 Md. at 477, 654 A.2d at 880 (quoting *Harris, supra,* 310 Md. at 315, 529 A.2d at 358).

---

including one or more of the following: ... (5) that certain matters not be inquired into or that the scope of discovery be limited to certain matters, (6) that discovery be conducted with no one present except persons designated by the court, (7) that a deposition, after being sealed, be opened only by order of the court....

 The collateral order doctrine permits the prosecution of an appeal from certain interlocutory orders. Mandamus, on the other hand, as we stated earlier, is not a vehicle for prosecuting an appeal. While it involves judicial review of orders passed by courts and administrative agencies and the actions of public officials, *see Gould, supra,* 273 Md. at 500–04, 331 A.2d at 65–67, issuance of the writ of mandamus does not depend upon qualifying under the collateral order doctrine even when, as here, the order sought to be reviewed is an interlocutory administrative discovery order. Rather the propriety of the writ is determined solely on the basis of the nature of the action reviewed as well as the existence, or not, of an alternative method of review. The reviewability of the issuance or denial of the writ of mandamus is not dependent on the collateral order doctrine.

 Although the purpose of the mandamus action was to review the panel chair's discovery decision, the appellant initiated a separate and independent mandamus action in the circuit court. That action was fully decided in that court. And because, with respect to the propriety of the issuance of the writ of mandamus, it settled, determined, and concluded the rights of the parties involved in that action, thus terminating the cause of action, *Estep v. Georgetown Leather,* 320 Md. 277, 282, 577 A.2d 78, 80–81 (1990); *Wilde v. Swanson,* 314 Md. 80, 84, 548 A.2d 837, 839 (1988); *Houghton v. County Commissioners,* 305 Md. 407, 412, 504 A.2d 1145, 1148, *on reconsideration,* 307 Md. 216, 513 A.2d 291 (1986); *Sigma Repro. Health Center v. State,* 297 Md. 660, 665, 467 A.2d 483, 485 (1983); *Highfield Water Company v. Washington County Sanitary District,* 295 Md. 410, 415, 456 A.2d 371, 373 (1983); *In re Buckler Trusts,* 144 Md. 424, 427, 125 A. 177, 178 (1924), it is final and appealable in its own right. *See Unnamed Attorney v. Attorney Grievance Commission,* 303 Md. 473, 480, 494 A.2d 940, 944 (1985); *In re Special Investigation No. 244,* 296 Md. 80, 85, 459 A.2d 1111, 1113 (1983); *In re Special Investigation No. 231,* 295 Md. 366, 370, 455 A.2d 442, 444 (1983).

*JUDGMENT AFFIRMED, WITH COSTS.*