467 A.2d 1046

**Joseph A. PELLEGRINO et al.**

v.

**Naji P. MALOOF, Personal Representative of the Estate of Joseph Louis Pellegrino.**

**No. 111, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Nov. 9, 1983.

Peter C. Schaumber, with whom were Susan A. Hoffstein, Colton & Boykin, Washington, D.C., Thomas H. Talbott and McCormick, Sullivan & Talbott, Rockville, on brief, for appellants.

No brief or appearance by appellee's counsel.

Argued before MOYLAN, LOWE and GARRITY, JJ.

LOWE, Judge.

Reading the brief and record extract of appellants Joseph A. and John R. Pellegrino is like entering a movie in the middle. Our understanding is further impeded by the failure of appellee Naji Maloof, Personal Representative of Joseph Louis Pellegrino's estate, to respond. As best we can perceive, appellants are the sons of Joseph L. Pellegrino who entered a third marriage late in life. Prior to this belated nuptial bliss with Shirley Benedict Pellegrino, Joseph L. had by will bequeathed his entire estate to his sons, Joseph A. and John R. At issue primarily is a substantial interest in an income producing property in the District of Columbia owned by Joseph L. and his sisters, which had been handed down through generations of the Pellegrino family.

In his final will, Joseph L. devised what appeared to be that property as follows:

"I give, devise and bequeath unto my two sons, JOHN R. PELLEGRINO and JOSEPH A. PELLEGRINO, or the survivor of them in equal shares all of the estate of whatsoever kind and wheresoever situate whether real, personal or mixed, that I may be entitled to receive by either devise, gift, legacy, trust or inheritance from my deceased father, ANTHONY PELLEGRINO's estate."

The residue of his estate was left to his new wife, Shirley Benedict Pellegrino.

We do not know from the brief but can surmise from the record extract, that half of Joseph L.'s one-third interest in the District of Columbia property technically came to his sisters and him from—or through—his mother, Antonia Pel-

legrino. She apparently had survived the Pellegrino patriarch, Antonio (Anthony) Pellegrino, who was her husband, Joseph L.'s father and appellants' grandfather. The other one-sixth interest came to Joseph L. from his sister Mary, who left her share by will to Joseph L., but added "... on the death of my brother Joseph L. Pellegrino his children shall take by representation the share that would have been their father ['s]." As we have indicated, this total of a one-third interest in the Pellegrino family property in D.C. was initially devised by a subsequently changed will of Joseph L. to his sons, born of Joseph L.'s first marriage.

When their father married late in life for the third time in June of 1980, his sons were less than gracious to the new fifty-seven-year-old bride, Shirley Benedict. During the following year Joseph L. suffered a stroke and a massive heart attack which brought about his death on August 15, 1981. At the funeral Naji Maloof, an attorney, who unbeknownst to the sons had prepared a new will for their father, advised the boys that their father had changed his will and left his home to his wife, Shirley, a house which the new personal representative of the estate (Mr. Maloof) described as of little value. No mention was made of the District of Columbia Pellegrino inheritance, leaving a sense of security in the former heirs that they had not been replaced.

Secure in their belief that the Pellegrino property had been passed on to them, appellants, after consulting counsel, swallowed their chagrin at losing the expectation of inheriting the family home and most of its contents. Upon counsel's advice, however, John wrote to Personal Representative Maloof concerning his "father's one-third interest in the Antonio Pellegrino Estate" asking that the Personal Representative contact his aunt, Frances Brown (who was handling that property), to verify that he and his brother were equal beneficiaries of their father's interest. John provided his telephone number at his home and his office in case Mr. Maloof had any questions.

Lulled by the *sub silentio* representation of Mr. Maloof that the Pellegrino property was still entirely in the Pellegrino family by virtue of the sons' inheritance, together with the conveyance of their supposed share of income by their aunt, Frances Brown, the appellants with the assistance of their counsel decided not to contest the will. Appellant, John R., was, therefore, shocked to receive a demand letter nearly a year after the death of his father, from an attorney, Renee LaFayette, representing the Personal Representative, Naji Maloof. Among other things the correspondence demanded the return of all monies resulting from the District of Columbia property sent to him since his father's death. The property upon which the demand was predicated was described as

> "the real estate which your *grandmother*, Antonia Pellegrino, left to your father and his siblings." (Emphasis added).

A subsequent demand letter sent to the appellants' attorney, however, described the property as "decedent's one-third (⅓) interest in the Antonio Pellegrino [grandfather's] Estate"

Significantly these demands were made four months after the expiration of the six month time period following the first appointment of a personal representative of a probated will within which time period a petition to caveat must be filed. Md. Est. & Trusts Code Ann. § 5–207. Also of note, it was not until after this time had lapsed that the personal representative filed an inventory with the orphans' court despite authorization having been granted nearly a year before.

The personal representative filed a Petition for Delivery of Concealed Assets of Estate and Rule to Show Cause against Frances Brown, decedent's sister, who was by agreement handling the Pellegrino property in D.C. Ms. Brown answered the petition by denying the concealment of assets or information concerning the assets from Mr. Maloof and filed a cross-petition for construction of the decedent's will. Appellants were permitted to intervene in a cross-petition

for construction of their father's will and these cases were transferred to the Circuit Court for Calvert County.

With the motion to intervene, appellants filed a Verified Petition to Caveat which was denied due to its untimeliness. Subsequently they filed a Motion for Reconsideration, together with Amended Verified Petition to Caveat containing factual allegations intended to circumvent the six month limitation following administrative probate, Est. & Trusts, § 5–304(a), by complying with § 5–304(b)(3).

"An administrative probate may be set aside and a proceeding for judicial probate instituted if, following a request by an interested person within 18 months of the death of decedent, the court finds that:

. . . . .

(3) There was fraud, material mistake, or substantial irregularity in the prior probate proceeding."

Appellants alleged in their Amended Verified Petition to Caveat facts provable by which a factfinder could decide: that until the last year of his life, their father's will written in 1977 had bequeathed his estate to them; that their father married Shirley Benedict fourteen months before he died, during that time he had a stroke or heart attack rendering him incompetent; that as evidence supporting his questionable competency, his bride had taken over all of his business transactions; that six months after his marriage, following his second serious heart attack, decedent executed another will, drawn by Naji Maloof naming himself as personal representative; that the Maloof will specifically bequeathed their father's home and personalty to his wife, and to his two sons what semantically appeared to be his interest in the Pellegrino property which he had received from his "deceased father, Anthony Pellegrino" in the District of Columbia; that the residue was left to his wife; that the personal representative by partial representation and intended omission of significant facts led appellants to believe that they were the heirs of their father's interest in the Pellegrino property in D.C.; that the personal representa-

tive, by his conduct, knowingly and intentionally diverted appellants from discovering the import of the ambiguity in the will that the Pellegrino inheritance had come to Joseph L. through their grandmother Antonia, presumably because Antonio (Anthony) Pellegrino had predeceased her; that such obscured description which left them nothing by specific devise was equally obscure to the testator who was incompetent at the time of executing his will and was unduly influenced by, and on behalf of, his new bride; that the same fraud perpetrated by the ambiguous language upon their incompetent father wrongfully to obtain the Pellegrino inheritance for Shirley Benedict, was perpetrated upon appellants as well to keep them from obtaining a judicial probate within the prescribed time limitations; that the failure of the personal representative to file an inventory within that time period or even to include a description of the Pellegrino inheritance when it was filed (which should have disclosed the interpretation subsequently placed upon the ambiguous language by the personal representative) further supports the inference that the personal representative (who was not an executor in the original will) connived to keep appellants ignorant of the obscure interpretive facts giving rise to a controversy, thus keeping them away from court, and, that by his silence, failure to respond and failure to perform his office properly kept the appellants in ignorance of their right to, and need for, judicial probate to protect their alleged inheritance.

The orphans' court granted the motion to reconsider and the personal representative took the opportunity to respond to the caveat petition. The lengthy response, however, was submitted to the court on the same day it decided to deny the amended petition. Assuming that the court read and considered the response, we note that it appears to have been a defense of Shirley Benedict Pellegrino against the allegations of undue influence on her husband and of his incompetency, as well as the fraud, rather than a defense of the personal representative against the inferential allega-

tions of fraud on the appellants by keeping them from court until limitations had expired.

The orphans' court denied the Amended Verified Petition to Caveat stating simply that it had found "no evidence of fraud, material mistake or substantial irregularity", which is the language of Md. Est. § Trusts Code Ann., § 5–304(b)(3).

■ Clearly at issue, however, is not the substance of the caveat, *i.e.,* whether the second will was, or was not, valid, but only whether that matter should be adjudicated. There certainly were sufficient facts alleged in the Amended Verified Petition to Caveat to indicate a cause of action.

■ But more pertinently, the "fraud" of which the statute speaks is (as in Md.Rule 625 a) an extrinsic fraud preventing a fair submission of the controversy; it is not concerned at this juncture with whether the testator was imposed upon. *Hamilos v. Hamilos,* 297 Md. 99, 465 A.2d 445 (1983). As the Court of Appeals pointed out in *Schwartz v. Merchants Mort. Co.,* 272 Md. 305, 322 A.2d 544 (1974), the extrinsic fraud necessary to set aside an enrolled decree under Md.Rule 625 a, and analogously to permit the caveat of a will under § 5–304(b)(3), arises:

" 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; . . . these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.' " *Schwartz, supra* at 309, 322 A.2d 544, quoting *United States v. Throckmorton,* 98 U.S. 61, 65, 25 L.Ed. 93 (1878).

In response to the allegations by appellants of fraud, as they would apply extrinsically in this case, the personal representative did nothing more than deny them in his

answer. In his affidavit he admitted, however, that he made a point of not discussing "any details concerning the deceased's will" at the funeral but "may have reassured the boys . . . that all would be well." He also implicitly conceded that he had not provided the boys with a copy of the will because when he received John's communication he

> "remember[ed] wondering in amazement how John got any such information in that [Mr. Maloof] had not given him a copy of the Will."

■ We are at a loss as to how or why the orphans' court peremptorily denied appellants' Amended Verified Petition to Caveat "having found no evidence" when it did not hold an evidentiary hearing. The amended petition, as well as the belated response, set forth allegations of fact which allegedly amounted to extrinsic substantial irregularity. To have denied the petition, the court necessarily either weighed the allegations as "evidence" or concluded that the evidence alleged by appellants, even if believed, was insufficient to show extrinsic fraud, material mistake or substantial irregularity. Either would have been error because it depended solely on the pleadings.

It should be pointed out that the entire matter appears to have resolved into a spite fight, not only among the prospective heirs but among their respective counsel as well. The petitions and responses are replete with irrelevancies regarding these persons and we suggest that such spite is precisely what good counselling is designed to avoid—not to perpetrate or enhance. Counsel should be concerned with their clients' rights but certainly not with who wins a name-calling contest.

■ When these irrelevancies are disregarded, as we have pointed out, there was sufficient evidence, if proven and believed, alleged in the Amended Verified Petition to Caveat to have permitted a caveat pursuant to § 5–304(b)(3). Note that it is not our role to weigh that evidence; it is the role of the orphans' court when sufficient evidence is alleged to overcome the partial limitations barrier if proven.

 The additional fact that the personal representative failed to prepare and to file an inventory within three months after his appointment "listing each item in reasonably descriptive detail" in violation of § 7–201 of the Estates and Trusts Article of the Annotated Code of Maryland when added to the other cumulative circumstances in the context of the allegations is itself a "material mistake" or "substantial irregularity" (which are terms in the analogous context of Rule 625 a that have been equated). *Hughes v. Beltway Homes, Inc.,* 276 Md. 382, 386, 347 A.2d 837 (1975). "Irregularity" in the contemplation of that rule (625 a), and we believe of § 5–304(b)(3), of the Estates and Trusts Article of the Annotated Code of Maryland, usually means irregularity of process or procedure, *Weitz v. MacKenzie,* 273 Md. 628, 631, 331 A.2d 291 (1975), which also means comparably to apply to "mistake" in this context. See *Hughes, supra* 276 Md. at 387, 347 A.2d 837.

 It certainly would seem that if believed, evidence indicating that the personal representative 1) who had drawn a will with an apparent substantial ambiguity, 2) who had implicitly reassured the sons of the decedent about the subject matter of the ambiguous provision, and 3) who had declined to respond to correspondence predicated on what he subsequently determined to be a mistaken understanding of the ambiguity, had (to be charitable) made a "material mistake" or committed a "substantial irregularity" when he failed to prepare and to file timely an inventory pursuant to his statutory responsibility reasonably describing the District of Columbia property as an asset of the estate. If a factfinder were not so charitable, he could have in the context of the evidence alleged, if proven and believed, found that the personal representative's conduct in performing his duties was fraudulent or was deceptively calculated to keep appellants from court by keeping them ignorant of their impending loss and consequently of their cause of action until the limitations bar had fallen. See *Schlossberg v. Schlossberg,* 275 Md. 600, 343 A.2d 234 (1975).

We hasten to point out that despite the verification of the Amended Petition to Caveat (as contrasted with the unverified argumentative response) appellants' assertions and allegations of evidence were mostly circumstantial and subject to a factfinder's role of drawing or rejecting legitimate inferences therefrom. In determining whether to hear evidence, the court should have assumed all inferences legitimately to be drawn in favor of the petitioners. It is only after the evidence is offered at a hearing that the orphans' court as factfinder may infer or not, believe testimony or not, and weigh conflicting evidence by viewing and hearing the parties and judging their credibility.

To the extent that appellants properly alleged evidence of undue influence, incompetency or fraud, intrinsic in the execution of the will, they need only to show (as in setting aside judgments by default) that they have a legitimate cause of action. While that is a necessary element implicit in the statute, it is not an issue yet in controversy that should be decided unless the petition to caveat is permitted. We will vacate the order of December 14, 1982, and remand this matter to the orphans' court for an evidentiary hearing to determine whether appellants have met the burden imposed by § 5–304(b)(3) of the Estates and Trusts Article of the Annotated Code of Maryland. We recommend to the court, whatever its determination, that it provide a record of its findings of fact and reasons for its conclusion. As pointed out by the Court of Appeals in *Blue Bird Cab v. Dep't of Emp. Sec.,* 251 Md. 458, 466, 248 A.2d 331 (1968),

"... a fundamental requirement of due process of law in a quasi-judicial proceeding is the right of the parties to be apprised of the facts relied upon by the tribunal in its decision."

ORDER OF DECEMBER 14, 1982 VACATED. CASE REMANDED FOR HEARING PURSUANT TO THIS OPINION. COSTS TO BE PAID BY PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSEPH LOUIS PELLEGRINO.