843 A.2d 877

Steven **KERPELMAN**

v.

**DISABILITY REVIEW BOARD OF PRINCE GEORGE'S COUNTY POLICE PENSION PLAN.**

**No. 2946, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

March 4, 2004.

514

Lloyd J. Eisenberg of Silver Spring, MD, for Appellant.

Thomas G. Hagerty (Semmes, Bowen, Semmes, on the brief) all of Washington, DC, for Appellee.

Panel: ADKINS, BARBERA, and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

ADKINS, Judge.

Corporal Steven Kerpelman appeals the grant of a motion to dismiss his action in the Circuit Court for Prince George's County for a writ of mandamus. In his mandamus action, Kerpelman asked the court to order the Medical Advisory Board (MAB) and the Disability Review Board (DRB), established under section 4.2 of the Prince George's County Police Department Pension Plan Document (the Plan), to reverse their decisions that he does not have a qualifying disability. He contends that appellees, the MAB and DRB (the Agency), acted arbitrarily and capriciously, and failed to follow their

own rules of procedure, when they refused to grant him a hearing or appeal of the MAB's determination. He noted three questions on appeal, which we consolidate to:

Whether, under the Plan, the MAB, following its review of an application for disability retirement, is required to issue a written opinion containing findings of fact to the DRB, in cases when it finds that no qualifying disability exists to support the application for service related disability.

We hold that, under the Plan, the MAB is required to issue to the DRB a written opinion containing findings of fact following its review of an application for disability retirement benefits, even when it finds no qualifying disability. We reverse the dismissal of the writ of mandamus, and remand this case to the circuit court for action in conformance with this opinion.

## FACTS AND LEGAL PROCEEDINGS

Corporal Steven Kerpelman is a 20–year veteran of the Prince George's County Police Department, who suffers from hypertension. In August 2001, Kerpelman applied for service-connected disability retirement benefits under the Plan. Pursuant to section 4.2 of the Plan, he requested that the MAB review his medical records in order to establish his right to disability retirement.

The MAB met on September 6, 2001, to review Kerpelman's medical records. The MAB reviewed, *inter alia,* conflicting medical evaluations from: Dr. D. Leonard Griffen, III, dated August 13, 2001; Dr. Ross S. Myerson, dated September 19, 2000; and Dr. Richard G. Ammerman, dated September 8, 2000. On September 7, 2001, Retirement Administrator Kathleen W. Colbert sent a memorandum to Police Chief John S. Farrell, communicating the MAB's conclusion that "Kerpelman was not a candidate for retirement since there was no disabling condition." [1] Kerpelman was subsequently ordered to return to "full duty."

---

1. Pursuant to section 8.1 and 8.2 of the Plan, the Retirement Administrator has authority to act on behalf of the MAB.

On November 1, 2001, the MAB again met to consider Kerpelman's fitness for duty. After reviewing additional information related to high blood pressure in general, and his condition in particular, the MAB again found Kerpelman fit for full duty. Colbert's November 2, 2001 memo to Chief Farrell concluded, "[a]fter reviewing all records, the [MAB] indicated . . . Kerpelman is fit for full duty. The [MAB] found no objective evidence to indicate that . . . Kerpelman is disabled. The [MAB] did recommend more aggressive treatment of his blood pressure." Kerpelman was ordered to full duty on November 12, 2001.

Kerpelman retained counsel, who demanded a written statement of the MAB's findings. Colbert's December 14, 2001 letter to Kerpelman's counsel restated her November 2, 2001 memo, and added that "an independent medical evaluation to further assess [Kerpelman's] medical condition" would be scheduled. By order of the MAB, Kerpelman was examined by Gerald I. Shugoll, M.D., to provide an independent medical opinion. Dr. Shugoll reported in his February 4, 2002 letter to Colbert that Kerpelman suffers from

> a chronic, permanent condition, and even under treatment, may well be aggravated by significant emotional stress. Thus, as a police officer, light duty would be more appropriate than the full requirements of his position, but this need will have to be permanent. He has already demonstrated an inability to consistently carry out the duties of his occupation, without periodically developing symptoms in high stress situations. Thus, a disability exists.

On March 8, 2002, Colbert wrote to Acting Police Chief Gerald M. Wilson to inform him that on March 7, 2002, the MAB had again found Kerpelman fit for full duty. Kerpelman was ordered to full duty on March 15, 2002.

On March 22, 2002, Kerpelman requested a formal hearing before the DRB.

Nephrologist Anne M. Thompson, M.D. evaluated Kerpelman on April 22, 2002. She reported in her letter of that date, that he

has essential hypertension with clear cut evidence of end-organ damage—i.e., hypertensive cardiovascular disease with left ventricular hypertrophy and left atrial enlargement and early hypertensive retinopathy. He also has hyperlipidemia currently controlled by Lipitor. He has had at least two well-documented episodes of tachycardia and moderately severe hypertension associated with stress.

I strongly recommend that he either be assigned permanently to light duty or be retired on medical disability. I think that continuing in regular police duty would put him at high risk for myocardial infarction or cerebrovascular accident or at the very least, for progression of his LVH to a symptomatic stage.

On April 24, 2002, S. Ross Myerson, M.D., reported on a medical evaluation he had performed on Kerpelman. Dr. Myerson diagnosed Kerpelman with "mild to moderate hypertension and very mild left ventricular hypertrophy." He found that his blood pressure was "well-controlled on medication" and that there is no evidence of an "abnormal blood pressure response to exercise." He recommended that "further adjustments in medication could be made," and concluded that "it does not appear that Mr. Kerpelman is disabled from his work as a police officer."

According to Colbert's June 7, 2002 letter, the MAB found Kerpelman fit for duty when it met on May 2, 2002. Regarding his request for a hearing, Colbert informed Kerpelman that section 4.2(b) of the Plan states that the MAB shall provide "a written opinion regarding the nature, cause, degree of permanence and effect of the alleged disability" if it finds him "to have a permanently disabling condition within the definition of disability in Section 4.2(a)." The DRB then reviews the written opinion of the MAB and renders a preliminary determination as to disability. Because the MAB issued no such opinion of disability, Colbert explained, the DRB cannot make a preliminary determination from which a hearing may be had. He was again ordered to full duty.

Colbert requested that Dr. Shugoll explain why Kerpelman was not fit for duty. In his July 1, 2002 reply, Dr. Shugoll concluded, "[a]lthough ordinarily, a well hypertensive should be capable of performing the full duties of a police officer, in this case, the patient has demonstrated an inability to carry out his full duties, without symptomatic limitations, when exposed to extraordinary stress."

Cardiologist D. Leonard Griffen, M.D., is Kerpelman's treating physician. On July 10, 2002, Dr. Griffen concluded both that Kerpelman's hypertension is exacerbated by physical exertion and by his line of work. He added that Kerpelman's hypertension, "[w]hile currently controlled ... provides him with a disability for his chosen line of work."

At its August 1, 2002 meeting, the MAB found Kerpelman fit for full duty after it reviewed the July 1, 2002 and July 10, 2002 reports from Drs. Shugoll and Griffen, respectively. Colbert reported that "[t]he Board indicated that his complaints appear to be physiologic and not pathologic." The MAB questioned the efficacy of his medication regimen and requested additional information from his treating physician, explaining, "to determine whether there is any medically disabling condition, the Board must have some demonstrable proof of a trial of adequate medication or combination of medications to control hypertension."

On August 23, 2002, Kerpelman filed his complaint for a writ of mandamus to the MAB and DRB, directing the reversal of their decision that he is not entitled to disability retirement under section 4.2(c)(2) of the Plan. He alleged that "the MAB and DRB abused their discretion by repeatedly making findings against the indisputable evidence the [he] is unfit for duty as a police officer, and is entitled to disability retirement[,]" and that they "acted arbitrarily, capriciously, and unreasonably," in "refusing to grant [him] a hearing or appeal from the findings of the [MAB]." The Agency filed a motion to dismiss for failure to state a claim upon which relief can be granted.

A hearing was held on the motion on January 10, 2003. In its order entered October 9, 2003, the motion court granted the motion to dismiss after finding that it did not have jurisdiction to hear the case under Md. Code (1984, 1999 Repl. Vol.), section 10–222(a) of the State Government Article, because the administrative agency had not rendered a final decision. Kerpelman appeals from that dismissal.

## DISCUSSION

### I.

### Standard Of Review

Kerpelman notes that the MAB and DRB never issued findings of fact related to his application for disability retirement. Rather than challenge the MAB's determination that he did not have a qualifying disability, he instead challenges the Agency's "erroneous interpretation of its procedural rules governing the evaluation of disability claims."

We recently explained at length the standard we employ on judicial review of administrative decisions.

"Our role in reviewing an administrative decision is 'precisely the same as that of the circuit court.' ... [W]e review the administrative decision itself.

'Judicial review of administrative agency action is narrow.' In reviewing the Board's decision, this Court must not engage in judicial fact-finding. Nor may we supply factual findings that were not made by the Board. Moreover, this Court may not uphold the agency's decision 'unless it is sustainable on the agency's findings and for the reasons stated by the agency.' ...

In contrast to findings of fact, however, an agency's interpretation of law is not entitled to deference. When the question before the agency involves interpretation of an ordinance or statute, our review is more expansive. We are not bound by the agency's interpretation. Thus, 'a reviewing court is under no constraints in reversing an administra-

tive decision which is premised solely upon an erroneous conclusion of law.' "

*Bozeman v. Disability Review Bd. of the Prince George's County Police Pension Plan,* 126 Md.App. 1, 4–5, 727 A.2d 384 (1999) (citations omitted).

▪▪▪ Generally, we defer to the interpretation given a statute by the agency charged with administering it. *See Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.,* 346 Md. 437, 445, 697 A.2d 455 (1997). In *Marriott,* the Court of Appeals explained that "[t]he consistent and long-standing construction given a statute by the agency charged with administering it is entitled to great deference, as the agency is likely to have expertise and practical experience with the statute's subject matter." *Id.* Nevertheless, "[a]n administrative agency's construction of the statute is not entitled to deference ... when it conflicts with the unambiguous statutory language." *Id.* at 446, 697 A.2d 455. Further, "when statutory language is clear and unambiguous, administrative constructions, no matter how well entrenched, are not given weight." *Macke Co. v. Comptroller of the Treasury,* 302 Md. 18, 22–23, 485 A.2d 254 (1984).

▪▪▪ An agency's erroneous interpretation of its regulations must yield to the plain language of the statute. "No custom, however long and generally it has been followed by officials, can nullify the plain meaning and purpose of a statute." *Bouse v. Hutzler,* 180 Md. 682, 687, 26 A.2d 767 (1942).

Kerpelman contends that the agency misinterpreted the Plan. "A challenge as to a regulatory interpretation is, of course, a legal issue." *Dep't of Human Res. v. Thompson,* 103 Md.App. 175, 191, 652 A.2d 1183 (1995). He also argues that the language of the Plan is clear and unambiguous. We agree. Consequently, we give no deference to the agency's interpretation and "may substitute [our] judgment for that of the agency." *Liberty Nursing Ctr., Inc. v. Dep't of Health and Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941 (1993).

## II.

## Preservation Of Issue For Appeal

■ As a preliminary matter, the Agency argues Kerpelman seeks to raise issues for this Court's review that were not raised below. The record does not support this argument.

In paragraph 13 of his complaint, Kerpelman alleged that the MAB's refusal to issue a written opinion concerning his claim for disability retirement constituted arbitrary and capricious behavior. In his complaint for a writ of mandamus, Kerpelman represented that he had "requested an evidentiary hearing on the issue of whether his disability qualifies him for disability retirement. However, his request for such a hearing has been denied, leaving [him] no means by which to contest the findings of the [MAB] and DRB."

We conclude that the issue raised in this appeal was properly raised below and preserved for appeal.

## III.

## The Police Pension Plan

The Prince George's County Council authorized the establishment of a police pension plan in Prince George's County Code section 16–231(a)(1995).[2] *See Bozeman,* 126 Md.App. at 6, 727 A.2d 384. Section 4.2(a) of the Plan provides the definition of disability.

A Participant shall be retired on a Disability Retirement Date if he meets all of the following conditions ...

(1) The Participant is so disabled, mentally or physically, that he is unable to fill any position then available to him as an Employee.

(2) His disability is likely to be of long duration.

---

2. The Plan was established in its current form in 1973, was revised and restated in 1983 and 1991, and is before us in a revised and restated Plan document effective July 1, 1998. *See* Prince George's County, M.D., Police Pension Plan, Preamble (1998).

(3) His disability has not resulted from service in the armed forces of any country for which he receives a military pension, was not caused or connected with the use of drugs prohibited by law, or resulted from his engaging in a criminal act or an effort to bring about the injury of himself or any other person.

Section 4.2(b) governs determination of disability. It provides, in part:

(1) **All determinations of disability shall be made by the [DRB]** ... in accordance with the rules of procedure of the [DRB] as shall be in effect from time to time and as set forth in the Appendix. . . .

A disability determination shall commence upon written application of a Participant ... filed with the [MAB]. . . . The [MAB] shall conduct such inquiry as it deems necessary and proper under the circumstances, including a medical examination of the Participant by one or more members of the [MAB], or by a physician or physicians selected for that purpose by the [MAB], as the [MAB] deems necessary **in order to give the [DRB] a written opinion** with regard to the nature, cause, degree of permanence and effect of the alleged disability. **The [DRB] shall review the written opinion of the [MAB] and render a preliminary determination as to disability.** The preliminary determination of the [DRB] shall be communicated to the Participant. If the Participant disagrees with the preliminary determination of the [DRB], he may request a formal hearing which shall be held before the [DRB]. . . . Following this formal hearing, the [DRB] will render a final determination. If no formal hearing is requested, the preliminary determination shall become final.

(2) At the formal hearing, if so requested, the Participant whose disability is being determined shall be given the opportunity to examine any evidence presented to, or otherwise obtained by, the [DRB] in connection therewith, to comment on such evidence, and to introduce further evidence with respect thereto.

(3) A disability determination shall include, in all cases **where the [DRB] finds that a Participant is disabled** within the definition of disability in Section 4.2(a)(1), a determination by the [DRB] whether said disability was or was not caused by an injury or sickness suffered as a result of his performance of his duties as an Employee. (Emphasis added.)

Section 4.2(b)(1) of the Plan implicitly delegates authority "from the Prince George's County Council through the County Executive to the [DRB]" to "formulate rules of procedure." *Bozeman*, 126 Md.App. at 8, 727 A.2d 384. The Disability Review Board Rules of Administrative Procedure are set forth in Appendix 2 of the Plan.

Section 2 of the rules provides that the MAB "shall examine all evidence concerning the case ... and **provide a written opinion to the [DRB]** ... of the nature, cause, degree of permanence, and effect of the **alleged** disability." (Emphasis added.) The "DRB shall meet in administrative session to review the recommendations of the [MAB] and render a preliminary determination **as to disability** and the service or non-service classification of such disability." Section 4 (Emphasis added). Section 9(g) provides that "[t]he Participant ... shall have the burden of **proving** ... both **the disability** and its service connection ..." (Emphasis added.)

## IV.

### Misinterpretation Of The Rules Of Procedure

 The Agency interprets the rules of procedure to require the DRB to act upon an application for disability retirement "only in the event that there is a determination by the MAB that [Kerpelman] is disabled from performance of his duty as a police officer" and after the MAB issues a written opinion to the DRB. In her June 7, 2002 letter to Kerpelman's counsel, Colbert explained:

If the [MAB] finds Mr. Kerpelman to have a permanently disabling condition within the definition of disability in Section 4.2(a), it will provide the [DRB] a written opinion

regarding the nature, cause, degree of permanence and effect of the alleged disability. At that point, the [DRB] will review the written opinion of the [MAB] and render its preliminary determination as to disability.

Kerpelman contends that the Agency's interpretation of its rules of procedure is incorrect. He argues that, "[u]nder § 4.2(b)(1) of the Plan, it is clear that the [MAB] is required to provide a written report of its findings as to a claimant's disability. The [DRB] is then required to render an opinion of disability. This finding is a prerequisite for a claimant to request a hearing." He argues that "the [Plan] rules require the [DRB] to make **all** determinations as to an officer's disability." The Agency's interpretation of its procedural rules, that the MAB may "make summary determinations of disability, without written findings and without offering [him] the right to an appeal," resulted in his never having had "an opportunity to present his evidence at a hearing or to obtain the written findings of a fact finding Board." Thus, he concludes, his right to due process has been violated.

▮ An appellate court "should not decide a constitutional issue needlessly[.]" *Wyatt v. State,* 149 Md.App. 554, 562, 817 A.2d 901 (2003); *see Prof. Staff Nurses Ass'n v. Dimensions Health Corp.,* 346 Md. 132, 138, 695 A.2d 158 (1997). The Court of Appeals " 'has regularly adhered to the principle that [it] will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground.' " *Prof. Staff Nurses Ass'n,* 346 Md. at 138, 695 A.2d 158 (citation omitted). Because we hold that the Agency failed to correctly interpret the Plan, we do not reach Kerpelman's due process argument.

Section 4.2(a)(1) of the Plan reserves to the DRB "[a]ll determinations of disability[.]" The role of the MAB is to "conduct such inquiry as it deems necessary and proper under the circumstances ... in order to give the [DRB] a written opinion with regard to the nature, cause, degree of permanence and effect of the **alleged** disability." The MAB's sole job under the Plan is to render an opinion about the "alleged"

disability in order to facilitate a knowledgeable determination of disability by the DRB.

■ The Agency interprets the Plan to require the MAB to render an opinion only in cases in which it finds that a qualifying disability exists. Under the Agency's interpretation, for cases where the MAB finds no qualifying disability, it does not forward a written opinion to the DRB, the DRB does not render a preliminary determination, and the right to a hearing is not triggered. The net effect of the Agency's reading of the Plan is to authorize the MAB to make disability determinations. This the Agency cannot do. "[W]hen ... the decision is required to be made or approved by a designated official, that official may not delegate the ultimate decision-making responsibility." *Quesenberry v. Washington Suburban Sanitary Comm'n*, 311 Md. 417, 425, 535 A.2d 481 (1988).

The Agency argues that "[o]nly in the event that there is a determination by the MAB that he is disabled from performance of his duty as a police officer will the determination issued be handed to the [DRB] to act upon." This contention directly conflicts with the Plan.

Section 4.2(a)(1) states unequivocally that "[a]ll determinations of disability shall be made by the [DRB] ... in accordance with the rules of procedure of the [DRB]...." The DRB rules of procedure provide that "[t]he [MAB] **shall** examine all evidence concerning the case ... and **provide a written opinion** to the [DRB]," and "[w]ithin ten (10) calendar days after the [MAB] Meeting, the DRB **shall meet** in administrative session to review the recommendations of the [MAB] and render a preliminary determination **as to disability** and the service or non-service classification of such disability." (Emphasis added.)

Under this scheme, the role of the MAB is purely advisory. The Plan gives no decisional capacity to the MAB. The procedural rules provide that the MAB "shall provide a written opinion" to the DRB. The MAB, therefore, must issue a written opinion to the DRB in all cases. The Rules also

require that the DRB make a determination as to disability and whether that disability is service-connected.

Further, Rule 9(g) provides that "[t]he Participant shall proceed first at the formal hearing and shall have the burden of providing [sic] by a preponderance of the evidence both the disability and its service connection[.]" Implicit in this Rule is continued viability of the disability issue at the hearing stage. The Agency's contention that the DRB's function is to determine the service-connected status of the disability only after the MAB has found a disability is belied by this Rule. At this hearing stage, the DRB already has rendered a preliminary determination as to both disability and the service-connection status of the disability in question. If the MAB is authorized under the Rules to find an applicant not disabled, and issue a written opinion to the DRB only in cases that it finds a qualifying disability, there is no need to require an applicant challenging the DRB's preliminary determination to prove the existence of the disability. We conclude that Rule 9(g) implicitly supports the explicit provisions of Rules 2 and 4, and section 4.2(b)(1), that all disability determinations shall be made by the DRB after receipt of the written opinion of the MAB.

On four separate occasions, the MAB failed to issue a written opinion concerning Kerpelman's alleged disability to the DRB. By so doing, the Agency violated its own rules of procedure. We hold that the Agency erred when it failed to proceed in accordance with the rules of procedure established under the Plan.

## V.

### Writ Of Mandamus

The Agency questions the appropriateness of Kerpelman's use of mandamus to reverse the decision of the MAB and DRB that he was not disabled. The Agency contends that "there was nothing to reverse because it had never determined that [Kerpelman] was not disabled due to his service-connected disability[,]" and "that once the MAB has found

there is no disability, the rules and the policy did not require it to put something in writing and refer it to the DRB."

 We conclude that Kerpelman's decision to appeal the MAB finding to the circuit court through motion for writ of mandamus was procedurally correct. *See Cicala v. Disability Review Bd. For Prince George's County*, 288 Md. 254, 259–60, 418 A.2d 205 (1980). "In the absence of a statutory provision for an appeal from a determination of an administrative agency, judicial review may be obtained through an action for a writ of mandamus." *Id.* at 259, 418 A.2d 205. Courts issue a writ of mandamus " 'to prevent disorder, from a failure of justice, where the law has established no specific remedy, and where in justice and good government there ought to be one.' " *In re Petition for Writ of Prohibition*, 312 Md. 280, 307, 539 A.2d 664 (1988) (citation omitted).

In *Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 707–08, 752 A.2d 200 (2000), the Court of Appeals explained that

[t]he common law writ of mandamus is an original action and not an appeal. . . . It "is a summary remedy, for the want of a specific one, where there would otherwise be a failure of justice. It is based upon reasons of justice and public policy, to preserve peace, order and good government." (Citations omitted.)

The *Philip Morris* Court observed that the Maryland Constitution is silent regarding appellate court power to issue a writ of mandamus, but concluded that "[it] may utilize the writs of mandamus . . . as an aid to appellate jurisdiction[.]" *Id.* at 710–11, 752 A.2d 200. "If the use of a writ is 'necessary to enable . . . [the Court] to exercise appellate jurisdiction it is in aid of that jurisdiction.' " *In re Petition for Writ of Prohibition*, 312 Md. at 304, 539 A.2d 664 (citation omitted). The *Philip Morris* Court concluded that "[t]he exercise of this Court's authority to issue an extraordinary writ was justified by the potential irreparable harm to the moving party and by the need to maintain the integrity of the legal system." *Philip Morris*, 358 Md. at 711, 752 A.2d 200 (citation omitted).

In *Goodwich v. Nolan,* 343 Md. 130, 146, 680 A.2d 1040 (1996), the Court of Appeals set forth a two-pronged test for determining if judicial review through a writ of mandamus is proper.

[J]udicial review is properly sought through a writ of mandamus "where there [is] no statutory provision for hearing or review *and* where public officials [are] alleged to have abused the discretionary powers reposed in them." Thus, prior to granting a writ of mandamus to review discretionary acts, there must be both a lack of an **available procedure** for obtaining review *and* an allegation that the action complained of is illegal, arbitrary, capricious, or unreasonable. (Citations omitted)(bold added).

Kerpelman was blocked from further pressing his case for disability retirement by virtue of the Agency's interpretation of its rules of procedure. The rules did not allow him to appeal the decision of the MAB that he did not have a qualifying disability. Under the rules, appeal was only available following issuance of a preliminary determination by the DRB, which the Agency determined only acts after the MAB finds a qualifying disability, and communicates that finding in a written opinion to the DRB. Because the MAB did not find him disabled, it did not issue a written opinion to the DRB. Consequently, Kerpelman found himself in "the ultimate 'Catch–22.'" He could not advance his application due to the MAB's determination, nor could he appeal that determination. Thus, the two prongs of the test for judicial action through writ of mandamus were met.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR ACTION CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**