907 A.2d 865

**1000 FRIENDS OF MARYLAND et al.**

v.

**Robert L. EHRLICH, Jr. et al.**

**No. 1245, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Sept. 19, 2006.

G. Macy Nelson, Towson, for Appellant.

Linda D. Strozyk and Jason D. Couch (J. Joseph Curran, Jr., Atty. General on the brief), Baltimore, for Appellee.

Panel: MURPHY, C.J., KENNEY and LAWRENCE F. RODOWSKY, (Retired, specially assigned), JJ.

KENNEY, Judge.

1000 Friends of Maryland and Nancy Davis (collectively "appellants") brought suit in the Circuit Court for Howard County against Robert L. Ehrlich, Jr. ("the Governor"), William Donald Schaefer ("the Comptroller"), and Nancy K. Kopp ("the Treasurer") (collectively "appellees"), challenging the actions of the Board of Public Works ("the Board") in approving for State funding a proposed expansion of Maryland Route 32 in Howard County. Appellants now appeal the court's dismissal of their claims. They present three questions, which we have rewritten and reordered as follows: [1]

1. Does the "Smart Growth" legislation allow for an exception for a transportation project on the basis of "extraordinary circumstances?"

2. If so, does the transportation project at issue in this case satisfy the criteria for the "extraordinary circumstances" exception?

3. Was the Board required to articulate factual findings in approving appellees' request?

For the following reasons, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

The "Smart Growth" legislation, enacted in 1997,[2] mandates that "the State may not provide funding for a growth-related

---

1. Appellants present the following issues:

 Whether the Board of Public Works disregarded the requirements of the Smart Growth Act.

 A. Whether the Board must articulate its factual findings;

 B. Whether the Smart Growth Act allows an exception for a transportation project on the basis of extraordinary circumstances; and

 C. Whether the Expansion meets the criteria for the extraordinary circumstances exception to the Smart Growth Act.

2. 1997 Md. Laws, ch. 759.

project [3] if the project is not located within a priority funding area." [4] Md.Code (1985, 2006 Repl.Vol.), § 5–7B–04(a) of the State Finance & Procurement Article ("SFP"). SFP § 5–7B–05(a)(1) provides two exceptions to the general ban on State funding of growth-related projects outside priority funding areas:

The State may provide funding for a growth-related project not in a priority funding area if:

(i) the Board of Public Works determines that extraordinary circumstances exist in accordance with the requirements of paragraph (2) of this subsection; or

(ii) the Board of Public Works approves the project as a transportation project that meets the requirements of paragraph (3) of this subsection. [5]

---

**3.** SFP § 5–7B–01(c) provides an extensive definition of "growth-related project."

**4.** *See* SFP §§ 5–7B–02 to 5–7B–03.

**5.** Paragraph (3) states:
The Board of Public Works may approve a transportation project under paragraph (1)(ii) of this subsection if the transportation project:
(i) maintains the existing transportation system, if the Department of Transportation and the Department of Planning determine the project does not serve to significantly increase highway capacity;
(ii) serves to connect priority funding areas, if:
1. the Department of Transportation and the Department of Planning determine that adequate access control or other measures are in place to:
A. prevent development that is inconsistent with § 5–7A–01(1), (2), and (3) of this title; and
B. maintain the viability of the project while concomitantly constraining development which potentially detracts from main street business areas; and
2. the Department of Transportation and the Department of Planning have first determined whether alternative transportation modes, such as mass transit and transportation demand management, provide a reasonable alternative to the project and that no reasonable alternative exists;
(iii) has the sole purpose of providing control of access by the Department of Transportation along an existing highway corridor; or
(iv) due to its operational or physical characteristics, must be located away from other development.

On July 21, 2004, the Board of Public Works considered a request by the Department of Transportation ("the Department") for approval of State funding to expand a portion of Maryland Route 32 in Howard County.[6] The Department acknowledged that the project does not qualify for funding as of right, but asserted that it falls within the exception for "extraordinary circumstances."[7] The Department informed

---

SFP § 5–7B–05(3).

The Departments informed the Board that the proposed project does not qualify under the transportation project exception because it would increase highway capacity and it would not connect priority funding areas.

6. The Board of Public Works consists of the Governor, the Comptroller of the Treasury, and the Treasurer. Md. Constitution art. 12, § 1. In this case, the Board convened with Governor Robert L. Ehrlich, Jr. and Treasurer Nancy K. Kopp present; Comptroller William Donald Schaefer was represented by Deputy Comptroller Stephen Cordi.

7. The Attorney General has opined that approval of a project by the Board under one of the statutory exceptions "does not obligate the State to subsidize or otherwise to fund a particular project." 84 Op. Att'y Gen. 33, 39 (1999). *See* SFP §§ 5–7B–04, 5–7B–05.

[The exception] process is not an appeal of a decision of another State entity, but rather a process for eliminating a statutory prohibition. The General Assembly made clear that the Smart Growth legislation was not intended to create a vehicle for appealing funding decisions. SFP § 5–7B–10. Nor does the grant of an exception by the Board reverse any action of another State agency. In particular, the exception process does not, in and of itself, obtain State funding for a project. Rather, an exception merely eliminates a statutory prohibition that would otherwise bar State funding.

\* \* \*

. . . The Board's approval does not fund the project but does allow the project to be funded in accordance with the State's budgetary procedures, without regard to Smart Growth funding restrictions.

84 Op. Att'y Gen. at 39, 48.

Representatives of the Department also stated that one prerequisite to securing federal funding of the proposed project at issue in this case is a determination of whether the project satisfies all state law requirements, including whether it qualifies under the "Smart Growth" legislation. Thus, the Department's request to the Board served the dual purpose of seeking approval for State funding and qualifying the project for federal funding.

According to the Department, this is the second time the "Smart Growth" exceptions have been applied. A representative of the Department stated that, in 1999, the Board approved the "Manchester Bypass" for funding under one of the exceptions, by a 2–1 vote. *See also*

the Board that the expansion of a 9½ mile section of Route 32 from two lanes to four has been planned for decades as a "connector between Interstate 70 and [Route] 97 . . , known as the Patuxent Freeway." The Department stated that this section of Route 32 is the most heavily traveled two lane highway in the State. The Department argued that the heavy traffic and high accident rate constitute an extreme hardship and that there is no feasible alternative location for the traffic.

The Board also heard statements from the State Highway Administration, legislators, representatives of interest groups, and concerned citizens. The Governor and the Deputy Comptroller voted in favor of the request; the Treasurer voted against it. The Board thereby approved the project for exemption from the "Smart Growth" restrictions.

Appellants brought suit on January 18, 2005, and filed an amended complaint on April 8, 2005. They asserted that, because the Comptroller was not present at the hearing, the Board had actually voted 1–1 on the request, and therefore the funding had to be denied. They also contended that the Board was required to issue factual findings. They sought a writ of mandamus requiring the Board to re-hear the request with all members present and issue factual findings, a declaratory judgment that the Board acted without authority, and an injunction against the Board's approval of the Department's request.

Appellees moved to dismiss appellants' amended complaint. They argued that the Comptroller legitimately transferred authority to an "Acting Comptroller," and that, because the "Acting Comptroller" voted in favor of the Department's request, the Board properly approved it by a 2–1 vote. They further argued that a majority vote by the Board was the "sole legal requirement" for approval of the request, and that findings of fact were not necessary.

----

84 Op. Att'y Gen. 33 (1999) (stating that the Manchester Bypass is not exempt from the "Smart Growth" statutes under the "grandfather" provisions, but that Carroll County or the Department could seek approval under the exceptions).

After a hearing on July 1, 2005, the court found that the Comptroller had validly exercised his "right to appoint his Deputy Comptroller to act on his behalf when he was unable to do so." The court stated that it "found no additional requirement in the statute for the Board of Public Works to make any [factual] findings prior to voting on an exception." The court granted appellees' motion to dismiss, issuing an order to that effect on July 13, 2005. Appellants noted this appeal on July 25, 2005.

## STANDARD OF REVIEW

 The standard of review on an appeal from the grant of a motion to dismiss is " 'whether the trial court was legally correct.' " *Britton v. Meier*, 148 Md.App. 419, 425, 812 A.2d 1082 (2002) (quoting *Fioretti v. Maryland State Bd. of Dental Exam'rs*, 351 Md. 66, 71, 716 A.2d 258 (1998)).

"In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 71–72, 716 A.2d 258 (1998) (citations omitted). In reviewing the complaint, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Id.* at 72, 716 A.2d 258; *see also Bennett Heating & Air Conditioning, Inc. v. NationsBank of Md.*, 342 Md. 169, 174, 674 A.2d 534 (1996); *Faya v. Almaraz*, 329 Md. 435, 443, 620 A.2d 327 (1993); *Berman v. Karvounis*, 308 Md. 259, 264–65, 518 A.2d 726 (1987). "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Faya*, 329 Md. at 443, 620 A.2d 327; *see also Bobo v. State*, 346 Md. 706, 709, 697 A.2d 1371 (1997).

*Britton*, 148 Md.App. at 425, 812 A.2d 1082.

## DISCUSSION

The definition of "extraordinary circumstances" is found in SFP § 5–7B–05(a)(2):

In order to determine that extraordinary circumstances exist under paragraph (1) of this subsection, the Board shall determine by a majority vote that:

(i) the failure to fund the project in question creates an extreme inequity, hardship, or disadvantage that clearly outweighs the benefits from locating a project in a priority funding area; and

(ii) there is no reasonable alternative for the project in a priority funding area in another location within the county or an adjacent county.

Section 5–7B–05(b) states the procedure for seeking approval of funding for a growth-related project in an area that is not a priority funding area:

(1) A request for approval by the Board under subsection (a) of this section may be made at the request of the governing body of the local jurisdiction in which the project is located or the Secretary with approval authority over the project.

(2) When making a request to the Board of Public Works, the applicant shall:

(i) identify the extraordinary circumstances that require State funds for the project; and

(ii) demonstrate that no feasible alternatives exist to making an exception to the requirements of this subtitle.

(3) The Board of Public Works, at its discretion, may require remedial actions to mitigate any negative impacts of the proposed project.

 Here, appellants sought mandamus, a declaratory judgment, and injunctive relief based on their contention that the Board was obligated to issue findings of fact to support its decision.[8]

---

**8.** Appellants also argued before the circuit court that the Board's action was invalid because the Comptroller did not participate in the funding approval. They do not pursue that argument on appeal. Accordingly, we will not consider it. *See Layman v. Layman,* 84 Md.App. 183, 191, 578 A.2d 314 (1990).

Note 8—Continued

Appellants raise two additional points on appeal. They argue that, because it is a "transportation project," the project can be funded only under the exception for transportation projects and is not eligible for "extraordinary circumstances" consideration. In addition, they contend that, even if the project can be funded under the "extraordinary circumstances" exception, it does not meet the requirements for that exception. These issues were not explicitly raised before the circuit court. Appellants' amended complaint presented three separate claims: (1) mandamus, (2) declaratory judgment, and (3) injunctive relief. In support of those claims, appellants asserted in the complaint that the Board's action was invalid because the Comptroller did not directly participate in the decision, and the Board had failed to issue findings of fact. The Board's motion to dismiss, appellants' response, the arguments at the motion hearing, and the court's ruling were limited to those issues. The court ruled as follows:

The Comptroller, in this Court's view, had the right to appoint his Deputy Comptroller to act on his behalf when he was unable to do so. He did so in writing. I found no additional requirement in the statute for the Board of Public Works to make any [factual] findings prior to voting on an exception.

I therefore find that the motion to dismiss has merit, and grant it. Thank you very much.

The only hint in the record of appellants' additional appellate arguments is found in the factual averments in Paragraph 20 of the amended complaint related to the failure to make findings of fact:

The Board did not articulate findings of fact sufficient to support a determination that the Expansion, whether as a whole or as to components such as its location, lay-out of exits, and width, meets each of the criteria of any of the four exceptions. The expansion does not meet the criteria of any of the exceptions.

On a motion to dismiss, the trial court must assume the truth of all well-pleaded facts and any reasonable inferences that can be drawn from those facts. *Hines v. French,* 157 Md.App. 536, 548, 852 A.2d 1047 (2004). " 'Dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff.' " *Id.* (quoting *Bobo v. State,* 346 Md. 706, 709, 697 A.2d 1371 (1997)). We have observed that, "[e]ssentially, a complaint is sufficient to state a cause of action even if it relates 'just the facts' necessary to establish its elements." *Tavakoli–Nouri v. State,* 139 Md.App. 716, 730, 779 A.2d 992 (2001). On the other hand, "the facts comprising the cause of action must be pleaded with sufficient specificity. Bald assertions and conclusory statements by the pleader will not suffice." *Bobo,* 346 Md. at 708–709, 697 A.2d 1371. The complaint must be sufficient to provide notice of the plaintiff's claims, establish the facts supporting those claims, and "define[ ] the boundaries of the litigation." *Scott v. Jenkins,* 345 Md. 21, 27–28, 690 A.2d 1000 (1997).

In our view, appellants failed to adequately raise the additional arguments before the circuit court. Generally, we will not consider any issue "unless it plainly appears by the record to have been raised in or decided by the trial court," and we decline to do so in this case. Md.

Section 5–7B–10(a)–(b) of the State Finance and Procurement Article states:

(a) *No private cause of action.*—This section may not be construed to create a private cause of action for any person or local government.

(b) *Decisions to fund projects.*—A decision to fund a project or not to fund a project as required under this subtitle shall not be subject to Title 10, Subtitle 2 (Administrative Procedure Act—Contested Cases) of the State Government Article.

The use of the word "section" in SFP § 5–7B–10(a) is puzzling.

One might read SFP § 5–7B–10(b) as denying any rights to proceed under the APA, and subsection (a) as simply clarifying that subsection (b) did not imply that, based on the grant or denial of funding for a project, some other private cause of action may exist. In ascertaining the intent of the legislature, we find it useful to look at the preamble to 1997 Md. Laws, ch. 759, which states specifically that "this Act does not create a private cause of action." In our view, looking at the legislation as a whole and the legislature's statement of the purpose, SFP § 5–7B–10(a) reflects the legislative intent to preclude private causes of action generally, including declaratory judgment and injunctive relief claims.

 Section 5–7B–10(a) of the State Finance and Procurement Article does not preclude appellants from seeking a writ of mandamus, which a court may issue " ' "to prevent disorder, from a failure of justice, where the law has established no specific remedy, and where in justice and good government there ought to be one." ' " *Kerpelman v. Disability Rev. Bd. of Prince George's County Police Pension Plan,* 155 Md.App. 513, 528, 843 A.2d 877 (2004) (quoting *In re Petition for Writ of Prohibition,* 312 Md. 280, 307, 539 A.2d 664 (1988)). "The plaintiff seeking a writ of mandamus must

Rule 8–131(a). *See also Livesay v. Baltimore County,* 384 Md. 1, 18–19, 862 A.2d 33 (2004).

demonstrate that a public official has a plain duty to perform certain acts, that the plaintiff has a plain right to have those acts performed, and that no other adequate remedy exists by which plaintiff's rights can be vindicated." *Prince George's County v. Carusillo,* 52 Md.App. 44, 50, 447 A.2d 90 (1982). *See also Freeman v. Local 1802,* 318 Md. 684, 693, 569 A.2d 1244 (1990).

Under SFP § 5–7B–05(b)(2), in making a request for approval for funding based on the "extraordinary circumstances" exception, the applicant must: "(i) identify the extraordinary circumstances that require State funds for the project; and (ii) demonstrate that no feasible alternatives exist to making an exception to the requirements of this subtitle." SFP § 5–7B–05(a)(2) provides that, before approving a project under the "extraordinary circumstances" exception, "the Board shall determine by a majority vote that" the project satisfies the statutory requirements. There is no express requirement that formal findings of fact supporting its determination be made and presented.

 Appellants contend that there is an implied requirement that the Board issue findings of fact, citing as authority, *Mehrling v. Nationwide Ins. Co.,* 371 Md. 40, 62–63, 806 A.2d 662 (2002) (holding that the Insurance Commissioner was required to issue "meaningful findings of fact and conclusions of law when rendering final decisions" in contested cases under the APA); *Bucktail, LLC v. County Council of Talbot County,* 352 Md. 530, 552–58, 723 A.2d 440 (1999) (holding that "piecemeal rezoning" involved adjudicative fact-finding, which warranted a meaningful statement of the Council's findings of fact); and *United Steelworkers of America AFL–CIO, Local 2610 v. Bethlehem Steel Corp.,* 298 Md. 665, 673–80, 472 A.2d 62 (1984) (holding that the Commissioner of Industry and Labor was required to include findings of fact and conclusions of law along with his order in a contested case under the APA). In those cases, however, the agency involved was engaged in quasi-judicial adjudications. We have said that, "[w]hen a board or agency makes factual determinations,

decides contested issues, or reviews applications, it performs a quasi-judicial function." *Mears v. Town of Oxford,* 52 Md. App. 407, 417, 449 A.2d 1165 (1982). Quasi-judicial proceedings involve "the fundamentals of due process," such as "a hearing," *Union Investors, Inc. v. Montgomery County,* 244 Md. 585, 588, 224 A.2d 453 (1966), and " 'the right of the parties to be apprised of the facts relied upon by the tribunal.' " *Pellegrino v. Maloof,* 56 Md.App. 338, 350, 467 A.2d 1046 (1983) (quoting *Blue Bird Cab Co. v. Dep't of Employment Sec.,* 251 Md. 458, 466, 248 A.2d 331 (1968)). For that reason, the exercise of "quasi-judicial functions" necessarily involve "rendering findings of fact and making conclusions of law to decide disputes between parties." *Chestnut Real Estate P'ship v. Huber,* 148 Md.App. 190, 199, 811 A.2d 389 (2002).

In approving funding of a growth-related project, the Board is not adjudicating a contested case involving fundamental rights of life, liberty, or property.[9] Rather, it is performing a "quasi-legislative" function, such as promulgation of a regulation or approving a budget. *See Fogle v. H & G Restaurant, Inc.,* 337 Md. 441, 453, 654 A.2d 449 (1995); Md.Code (1984, 2004 Repl.Vol.) § 10–502(j) of the State Government Article (defining "quasi-legislative function" for purposes of the "open meetings" statutory provisions). "[W]here ... the action is quasi[-]legislative in nature, the concepts applicable to an adversary proceeding have no relevance." *Union Investors,* 244 Md. at 588, 224 A.2d 453. Any requirement to issue findings of fact does not apply to the Board in this case.

The Board held a meeting at which it heard statements from, among others, representatives of the Department as to whether the project satisfies the requirements for "extraordinary circumstances." The Board then voted 2–1 to approve

---

9. We note that SFP § 5–7B–10(b) provides that "[a] decision to fund a project or not to fund a project as required under this subtitle shall not be subject to Title 10, Subtitle 2 (Administrative Procedure Act— Contested Cases) of the State Government Article."

the project for funding. In our view, the Board's actions satisfied its plain duty under the statute. Therefore, appellants' mandamus claim fails as a matter of law.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**